**Nouy SOK, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Defendant.**

**No. S–98–1925 FCD GGH P.**

United States District Court, E.D. California.

Oct. 12, 1999.

Quin Denver, Federal Defender, Daniel J. Broderick, Assistant Federal Defender, Richard A. Cohen, Staff Attorney, Carolyn M. Wiggin, Staff Attorney, Merdith A. Linsky, Staff Attorney, Sacramento, CA, for Petitioner.

Paul L. Seave, United States Attorney, Glyndell E. Williams, Special Assistant United States Attorney, Sacramento, CA, David W. Ogden, Acting Assistant United States Attorney, Terri J. Scadron, Senior Litigation Counsel, Thankful T. Vanderstar, Attorney, United States Department Of Justice, Civil Division, Office of Immigration Litigation, Washington, DC, for Respondent.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Petitioner Nouy Sok, an Immigration and Naturalization Service ("INS") detainee, filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner contends that his continued detention violates his due process rights guaranteed under the Fifth Amendment.

Petitioner was ordered deported to Cambodia on June 10, 1996, following his conviction of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. 8 U.S.C. § 1227(a)(2)(ii). Petitioner has been detained by the INS since April 10, 1996. The Cambodian Government has refused the INS's request for travel documents for petitioner. Petitioner has been in INS custody awaiting repatriation for over three years.

The matter was referred to Magistrate Judge Gregory G. Hollows pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262. The magistrate judge found that petitioner's detention violated his due process rights under the Fifth Amendment, and therefore, recommends that his petition for writ of habeas corpus be granted. After conducting a *de novo* review pursuant to Fed.R.Civ.P. 72(b), the court adopts the magistrate judge's recommendation, but on different grounds.[1]

Petitioner is being detained pursuant to 8 U.S.C. § 1231(a)(6), which states:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(c), 1227(a)(2), or 1227(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may be detained beyond the removal period*
> . . . .

(Emphasis added.) Petitioner is not "inadmissible" under section 1182, rather, he entered the United States on January 24, 1984 as a refugee and gained permanent residence status on June 22, 1988, retroactive to January 25, 1984. He was ordered deported on June 6, 1996, following his conviction of two crimes involving moral turpitude not arising out of a single scheme of criminal misconduct, and thus, is removable under 8 U.S.C. § 1227(a)(2). Petitioner is a "deportable" alien as that term is used in 8 U.S.C. § 1229a(e)(2)(B).[2]

---

**1.** The American Civil Liberties Union ("ACLU") has participated as amicus in a number of substantially similar cases pending in this district, including cases pending before the undersigned judge. Although the ACLU has not participated directly in this action, the arguments it raised are nonetheless relevant, and the government has had a full and fair opportunity to address them.

**2.** Section 1229a(e)(2) provides:
The term "removable" means—

Section 1231(a)(6) clearly provides for detention of inadmissible and certain "criminal aliens" beyond the 90–day removal period and does not expressly impose any limitations on the duration of such detention. The government contends that in enacting § 1231(a)(6), Congress intended to vest the Attorney General with discretion to detain such aliens beyond the removal period *with no fixed-time limitations.*

■ The Supreme Court has long held that "[a] restrictive meaning for what appear to be plain words may be indicated by ... the rule of constitutional adjudication ... that such a restrictive meaning must be given if a broader meaning would generate constitutional doubts." *United States v. Witkovich,* 353 U.S. 194, 199, 77 S.Ct. 779, 1 L.Ed.2d 765 (1957). Indeed, it is a fundamental tenet of statutory construction that:

> [W]here an otherwise acceptable construction of a statute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress.

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988).

■ Construing § 1231(a)(6) as vesting the Attorney General with the authority to detain deportable aliens beyond the removal period with no fixed-time limitations would raise a serious constitutional question.[3] *See, e.g., Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) (holding Congress may not disregard constitutional rights of aliens to life, liberty, and property without due process of law); *Phan v. Reno,* 56 F.Supp.2d 1149, 1154 (W.D.Wash.1999); *Tam v. Immigration and Naturalization Serv.,* 14 F.Supp.2d 1184, 1192 (E.D.Cal.1998). Accordingly, the court must "construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress." *Edward J. DeBartolo Corp.,* 485 U.S. at 575, 108 S.Ct. 1392.

In support of its position that Congress intended to vest the Attorney General with the discretion to detain deportable aliens specified in § 1231(a)(6) with no fixed-time limitations, the government cites to a letter from Deputy Attorney General Jamie Gorelick to Congressman Richard A. Gephart concerning a revision to H.R. 2202's version of § 1231(a)(6). As initially drafted, H.R.2002's version provided for continued detention only of inadmissible aliens.[4] On March 13, 1996, Gorelick asked that a revision be considered:

> The requirement that an alien be removed within 90 days ignores ... many barriers that are beyond the INS' control. Obtaining travel documents is labor intensive and may take considerable time. Such delays should not prejudice diligent enforcement efforts, and the INS should not be required to release aliens after 90 days in such instances
> . . . .
>
> We recommend that the current provision of the INA giving the Attorney General the discretion to detain an alien (other than an aggravated felon) after a final order and setting a six month period for removal, with an unlimited time

---

(A) in the case of an alien not admitted to the United States, that the alien is inadmissible under section 1182 of this title, or *(B) in the case of an alien admitted to the United States, that the alien is deportable under section 1227 of this title.* (Emphasis added.)

**3.** The court expresses no view as to whether § 1231(a)(6) permits the Attorney General to detain aliens inadmissible under section 1182 beyond the removal period where there is no

reasonable possibility that the alien's removal will be effected in the foreseeable future.

**4.** It read, in pertinent part:
(6) INADMISSIBLE ALIENS.—An alien ordered removed who is inadmissible under section 212 may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).
*See* 142 Cong. Rec. H–2378–05, *H2409 (1996).

for removal of an aggravated felon—be retained.

Letter from Jamie S. Gorelick to Richard A. Gephardt, at 32–33 (March 13, 1996), attached at Exhibit A to Government's Opp'n to Amicus Br. and Petitioner's Supp. Br. Assuming that the amendments to H.R.2002's version were, at least in part, in response to the concerns outlined in Gorelick's letter, implicit in the letter is the assumption that there exists a reasonable possibility that removal could be effected in the foreseeable future. Indeed, the letter explains that "[o]btaining travel documents is labor intensive and may take considerable time.... [and][s]uch delays should not prejudice diligent enforcement efforts." Use of the term *delay* suggests the eventual occurrence of the desired act. Gorelick's letter does not suggest an intent to vest the Attorney General with the discretion to detain deportable aliens beyond the removal period where there is no reasonable possibility that removal will be effected in the foreseeable future.

Accordingly, the court finds that it is a permissible, and therefore an appropriate construction, to restrict § 1231(a)(6) to authorizing detention of deportable aliens beyond the removal period only in cases where there is a reasonable possibility that removal will be effected in the foreseeable future.

Such a construction is much more consistent with the express statutory language than the Court's construction of the subject statute in *Witkovich*. There, the statute stated in pertinent part:

(d) Any alien against whom a final order of deportation ... has been outstanding for more than six months, shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General. Such regulations shall include provisions which will require any alien subject to supervision ... (3) *to give information under oath as to his nationality, circumstances,*

*habits, associations, activities, and such other information, whether or not related to the foregoing,* as the Attorney General may deem fit and proper ....

*Witkovich*, 353 U.S. at 195, 77 S.Ct. 779 (quoting 8 U.S.C.A. § 1252) (emphasis added).[5] Although the Court acknowledged that subsection (d)(3), "if read in isolation and literally, appears to confer upon the Attorney General unbounded authority to require whatever information he deems desirable of aliens whose deportation has not been effected six months after it has been commanded," the Court held that a restrictive meaning was required because the broader meaning urged by the government "would raise doubts as to the statute's validity." *Id.* at 201, 77 S.Ct. 779. Accordingly, the Court construed the statute to be limited to "authorizing all questions reasonably calculated to keep the Attorney General advised regarding the continued availability for departure of aliens whose deportation is overdue." *Id.* at 202, 77 S.Ct. 779.

On its face, the statute in *Witkovich* expressly vested the Attorney General with the authority to require aliens detained beyond the removal period to give any information the Attorney General deemed fit or proper. Accordingly, the Court's construction in *Witkovich* was contrary to the express wording of the statute. In the present case, no such unlimited authority is expressly found on the face of § 1231(a)(6). Rather, it provides that the Attorney General may detain certain specified aliens "beyond the removal period." Whereas a literal meaning of the statute at issue in *Witkovich* vested the Attorney General with unlimited authority to inquire into *any* subject he deemed fit, a literal reading of § 1231(a)(6) does not expressly vest the Attorney General with unlimited power to detain. Thus, construing § 1231(a)(6), as it relates to deportable aliens, as limited to those aliens for whom

5. Section 1252 has since been amended. Subsection (d), as amended, is now codified

at 8 U.S.C. § 1231(a)(3).

there is at least a reasonable possibility that removal will be effected in the foreseeable future is a less radical interpretation than that performed by the Court in *Witkovich*.

 The next question the court must address is whether petitioner's continued detention violates § 1231(a)(6). In other words, given the court's limited construction, whether there is a reasonable possibility that his removal will be effected in the foreseeable future.

Sometime prior to August 5, 1996, the INS requested travel documents for petitioner in order to effect his removal. On August 5, 1996, an official with the Cambodian embassy responded that because Cambodia and the United States have not yet negotiated an agreement to cover the deportation and return of former Cambodian citizens to Cambodia, the Cambodian embassy was not authorized to issue travel documents. It does not appear from the record that any further efforts have been made to remove petitioner, nor is there a reasonable possibility that petitioner's removal will be effected in the foreseeable future.[6]

Accordingly, the petition for writ of habeas corpus is GRANTED. This order is hereby STAYED: (1) for 60 days after entry of the same to allow the government an opportunity to appeal, and seek a stay pending appeal, and/or (2) pending a decision of the Ninth Circuit in *Binh Phan v. Reno*, 56 F.Supp.2d 1149,[7] whichever occurs first. *See Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1465 (9th Cir.1983) (trial court may stay action before it pending resolution of independent proceedings which bear upon case); *Tran,*

*et. al. v. Immigration and Naturalization Serv.*, S–98–1133 WBS/JFM P, S–98–1299 WBS/JFM P, S–98–1566 WBS/JFM P, S–98–1732 WBS/JFM P, S–98–1737 WBS/GGH P, S–98–2117 WBS/JFM P (E.D.Cal. Sept. 21, 1999) (order staying actions pending resolution of appeal).

IT IS SO ORDERED.

6. The government's assertion that petitioner's detention cannot be considered indefinite because petitioner has the right to periodic review of his detention answers the wrong question. As set forth above, § 1231(a)(6) authorizes detention of deportable aliens beyond the removal period only as to those aliens for whom there is a reasonable possibility that removal will be effected in the foreseeable future. Whether or not petitioner's detention is otherwise indefinite is not relevant to the court's determination herein.

7. On July 9, 1999, the United States District Court for the Western District of Washington issued a joint order in five related actions: *Binh Phan, et al. v. Reno*, 56 F.Supp.2d 1149 (W.D.Wash. 1999). That joint order is currently on appeal to the Ninth Circuit in *Son Thai Huynh v. Reno*, Ninth Circuit Case No. 99–35703.