Hoang Manh NGUYEN; Nam Viet Nguyen; Ngoc Van Nguyen; Minh Nhat Phan, Petitioners,

v.

Adele FASANO, San Diego District Director, Immigration and Naturalization Service; Janet Reno, United States Attorney General, Respondents.

No. 99–CV–1885–K(CGA).

United States District Court, S.D. California.

Feb. 1, 2000.

1100

Gina L. Darvas, Darvas Chaula and Aguirre, San Diego, CA, for petitioners.

U.S. Atty. CV, U.S. Atty, Office, Civil Div., San Diego, CA, for respondent.

## ORDER TO SHOW CAUSE

KEEP, District Judge.

On September 7, 1999, Petitioners Hoang Manh Nguyen, Nam Viet Nguyen, Ngoc Van Nguyen, and Minh Nhat Phan, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondents oppose.

## I. Background

Petitioners are aliens being detained by the Immigration and Naturalization Ser-

vice (INS); all are subject to final orders of deportation or removal. The following facts regarding are taken from the parties' papers.

## A. Hoang Manh Nguyen

Petitioner Manh Nguyen entered the United States as a refugee on November 26, 1985. (Pet.¶ 15). According to Petitioner Manh Nguyen, he later adjusted his status to that of lawful permanent resident of the United States, retroactive to his date of entry. (*Id.*). On November 12, 1991, he was convicted of first degree robbery and received a total sentence of 11 years, 4 months. (Resp.Exh. B, p. 2). On May 1, 1997, the INS placed Petitioner Manh Nguyen in removal proceedings and determined that he should be held without bond. (*Id.*, pp. 4–7). On June 24, 1997, an Immigration Judge ordered Petitioner Manh Nguyen removed from the United States to Vietnam; Petitioner Manh Nguyen appealed the decision to the Board of Immigration Appeals (BIA). (*Id.*, pp. 10–13). On January 8, 1998, the BIA dismissed Petitioner Manh Nguyen's appeal and affirmed the Immigration Judge's decision. (*Id.*, pp. 14–15). Petitioner Manh Nguyen appealed to the Ninth Circuit, which dismissed his petition for review as untimely. (*Id.*, p. 16). His order of removal was final as of June 4, 1998. (*Id.*, p. 18).

Petitioner Manh Nguyen alleges that he suffered a back injury in December, 1998; as a result he has been experiencing paralysis in his leg and has needed a walker or a wheelchair to move about. (Pet.Exh. 45). On March 24, 1999, Petitioner Manh Nguyen made a written request to the INS for his release from custody and included letters from family and friends pledging support and an offer of employment to Petitioner upon his release from custody. (*Id.* 38–45). On March 31, 1999, and October 6, 1999, the INS reviewed his file and determined both times that Petitioner should continue to be detained by the INS. (Resp.Exh. B, pp. 18–21). On October 18, 1999, the district director incorporated and reiterated the October 6,

1999, custody decision, but informed Petitioner Manh Nguyen of his right to appeal the decision to continue detention to the BIA pursuant to 8 C.F.R. § 236.1(d)(3)(iii). (*Id.*, p. 22). Petitioner Manh Nguyen has been in INS custody for 2 years and 8½ months.

## B. Nam Viet Nguyen

On May 30, 1990, Petitioner Viet Nguyen entered the United States as an immigrant. (Pet.¶ 24). On July 21, 1992, he was convicted of residential burglary with the use of a firearm and sentenced to seven years in prison. (*Id.* ¶ 26). On April 23, 1996, the INS placed Petitioner Viet Nguyen in deportation proceedings and set a bond in the amount of $12,000. (Pet.Exh. 71). Petitioner made a request for reduction in bond, which was denied. The Immigration Judge ordered him to be held without bond on May 7, 1996. (Resp.Exh. C, p. 6). On June 4, 1996, Petitioner Viet Nguyen was ordered deported to Vietnam. (*Id.*, p. 7). He did not appeal that decision to the BIA, and as a result, the deportation order became final. On April 2, 1999, Petitioner Viet Nguyen made a written request to the INS for his release from custody and included letters from his family and friends pledging support and an offer of employment. (Pet. Exh. 53–62). On August 5, 1999, the INS issued a custody decision holding that Petitioner Viet Nguyen would continue to be detained in INS custody and that the decision could not be appealed to the BIA. (Resp.Exh. C, p. 9). On October 18, 1999, the district director incorporated and reiterated the August 5, 1999 custody decision, but informed Petitioner Viet Nguyen of his right to appeal the decision to the BIA pursuant to 8 C.F.R. § 236.1(d)(3)(iii). (*Id.*, p. 10). Petitioner Viet Nguyen has been in INS custody for 3 years and 8½ months.

## C. Ngoc Van Nguyen

Petitioner Van Nguyen entered the United States on October 14, 1983 as a

refugee. (Pet.¶ 33). His status was subsequently adjusted to lawful permanent resident, retroactive to October 14, 1983. (*Id.*). On September 9, 1992, he was convicted of assault with a firearm and sentenced to seven years in prison. (Resp. Exh. D., p. 5). On March 26, 1996, the INS placed Petitioner Van Nguyen in deportation proceedings and set bond in the amount of $20,000. (*Id.*, p. 11). Petitioner Van Nguyen requested redetermination of the custody decision; on July 26, 1996, the district director ordered him held with no bond. (*Id.*). On December 2, 1996, Petitioner Van Nguyen was ordered deported to the United Kingdom, or alternatively, Vietnam. (*Id.*, p. 12). He did not appeal that decision, and the order became final.

On December 12, 1996, the INS requested travel documents from the United Kingdom, a request that was denied by the United Kingdom on December 16, 1996. (Pet.Exh. 80). On April 17, 1997, the INS requested travel documents from the Embassy of Vietnam. (*Id.* 79). On August 25, 1997, Petitioner Van Nguyen made a written request to the INS for release on an order of supervision. (*Id.* 75). Respondents submitted a file review dated March 31, 1999, that stated that release was not recommended at that time. (Resp.Exh. D., pp. 13–15). On July 1, 1999, a deportation officer submitted a memorandum to Assistant District Director Kim Porter that concluded that Petitioner Van Nguyen would not pose a threat to the community upon release from INS custody. (*Id.*, p. 16). On August 5, 1999, however, the INS determined that Petitioner Van Nguyen should continue to be detained in INS custody and that such decision was not appealable. (*Id.*, p. 20). On October 18, 1999, the district director incorporated and reiterated the August 5, 1999 custody decision, but informed Petitioner Van Nguyen of his appeal rights pursuant to 8 C.F.R. § 236.1(d)(3)(iii). (*Id.*, p. 21). Petitioner Van Nguyen has been detained by the INS for 3 years and 10 months.

### D. Minh Nhat Phan

Petitioner Phan entered the United States as a refugee on October 27, 1981. (Pet.¶ 42). His status was subsequently adjusted to lawful permanent resident, retroactive to October 27, 1981. (*Id.*). On July 28, 1989, Petitioner Phan was convicted of attempted second degree murder and sentenced to fourteen years in prison. (Resp.Exh. E, p. 2). On May 28, 1996, the INS placed him in deportation proceedings and ordered him held without bond. (*Id.*, p. 5). On September 17, 1996, he was ordered deported to Australia with an alternative order of deportation to Vietnam. (*Id.*, p. 6). Petitioner Phan did not appeal from that decision so it became final.

On September 19, 1996, the INS requested travel documents for Petitioner Phan from Australia. (Pet.Exh. 123). Australia denied the INS's request and indicated that they would not accept Petitioner Phan as a deportee. (*Id.*) Petitioner Phan made many requests to the immigration judge for a change in his custody status, all of which were denied. (Pet.Exh. 102, 107, 110, 113). The INS requested travel documents from the Embassy of Vietnam in an undated letter. (Pet.Exh. 121). On January 4, 1999, the INS prepared a document regarding Petitioner Phan entitled "Information for travel document or passport." (Pet.Exh. 122). In March, 1999, Petitioner submitted letters from his parents and his sister, stating their support and an offer of employment. (Pet.Exh. 95–97). On August 3, 1999, a custody review was completed. (Resp.Exh. E, pp. 13–15). On August 5, 1999, the district director found that Petitioner Phan should continue to be detained in INS custody and that the BIA could not review this decision. (*Id.*, p. 16). On October 18, 1999, the district director incorporated and reiterated the August 5, 1999 decision, but informed Petitioner Phan of his appeal rights pursuant to 8 C.F.R. § 236.1(d)(3)(iii). (*Id.*, p. 17). Petitioner Phan has been in INS custody for 3 years and 8 months.

## II. Discussion

Petitioners challenge their continued detention as violating their substantive and procedural due process rights. Respondents, citing 8 U.S.C. § 1226(e) and § 1252(b)(9), first argue that this court lacks subject matter jurisdiction to decide these claims. Respondents also argue that Petitioners have not exhausted their administrative remedies because they have not appealed their custody decisions to the BIA. Last, Respondents argue that Petitioners' continued detention does not violate their substantive due process rights.

### A. Subject Matter Jurisdiction

Prior to reaching the merits of Petitioners' claims, this court must assess whether this court has subject matter jurisdiction over Petitioners' writ. Absent intervening law, this court has jurisdiction pursuant to 28 U.S.C. § 2241. Respondents' and Petitioners' respective positions require this court to review a number of provisions appearing in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L.No. 104–208, 110 Stat. 3009–546 ("IIRIRA"), codified in various sections of Title 8 of the United States Code. Accordingly, this court will turn to an examination of 8 U.S.C. § 1252 and 8 U.S.C. § 1226.

#### 1. Section 1252(g)

It is clear to this court that 8 U.S.C. § 1252(g) does not bar this court from hearing the § 2241 petition. Section 1252(g) states:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter. 8 U.S.C. § 1252(g).

In *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999), the Supreme Court held that 8 U.S.C. § 1252(g) should be read narrowly so as to apply only to "three discrete actions" that the Attorney General may take, namely the Attorney General's decision "to commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 943.

The challenge in this case does not involve a decision to "commence proceedings," to "adjudicate cases," or to "execute" a removal order. Rather, Petitioners' claims are unaffected by 1252(g) because they "constitute 'general collateral challenges to unconstitutional practices and policies used by the agency.'" *Walters v. Reno,* 145 F.3d 1032, 1052 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999) (quoting in part *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 492, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991)). Petitioners' challenge to their indefinite detention is therefore distinct from a petition that seeks review of the bond determination itself. *Cf. Walters,* 145 F.3d at 1052 n. 15 (analogizing to review of social security cases). A challenge to the constitutionality of prolonged and indefinite confinement pending deportation does not address any discretionary action by the Attorney General, and "does not implicate the three categories of unreviewable decisions specified in § 1252(g)." *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114, 1117 (S.D.Cal.1999). Accordingly, this court finds that § 1252(g) does not deprive it of jurisdiction to hear Petitioners' collateral challenges to the INS's implementation of federal law.

#### 2. Section 1252(b) and Section 1252(b)(9)

This court finds that § 1252(b) does not divest this court of jurisdiction over Petitioners' collateral challenges to their detention. Section 1252(b) applies to a "review of an order of removal" under § 1252(a)(1). 8 U.S.C. § 1252(b). The clear language of Section 1252(b)(1) demonstrates that it applies to final orders of removal, stating that petitions "must be

filed not later than 30 days after the date of the final order of removal." 8 U.S.C. § 1252(b)(1). District courts do not have jurisdiction over final removal orders. Rather, challenges to final removal orders are to be filed with the court of appeals for the judicial circuit "in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(b)(2).

Respondents rely on § 1252(b)(9), a section that has been referred to as an "unmistakable zipper clause," i.e., that § 1252(b)(9) regulates jurisdiction where no other specific provision applies. *Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999). Respondents maintain that 8 U.S.C. § 1252(b)(9) repeals this court's jurisdiction. Section 1252(b)(9) states that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from *any action taken or proceeding brought to remove an alien* from the United States under this subchapter *shall be available only in judicial review of a final order under this section.* 8 U.S.C. § 1252(b)(9) (emphasis added).

Although the Supreme Court reviewed the scope of § 1252(g) in *American–Arab Anti–Discrimination Committee,* the Supreme Court also discussed § 1252(b)(9) in that case. As described above, the Supreme Court held that § 1252(g) was not susceptible to a broad reading that would allow it to be applied to all deportation claims. In comparing the narrow scope of § 1252(g) to § 1252(b)(9), the Supreme Court indicated that § 1252(b)(9) "covers the universe of deportation claims." *American–Arab Anti–Discrimination Committee,* 119 S.Ct. at 943.

▆ Respondents argue that § 1252(b)(9) precludes the court from exercising jurisdiction specifically over the petition of Hoang Manh Nguyen because he is subject to a final order of removal. This court finds that the § 1252(b)(9) "zipper clause" does not deprive this court of jurisdiction over Petitioners' claims regarding their detention. Even with its broad scope, § 1252(b)(9) applies only to final orders of removal and is not intended to cover all challenges by an alien to all aspects of the treatment he or she receives during the deportation process. Although *American–Arab* indicates that § 1252(b)(9) is a zipper clause, there is no support in the legislative history or the statute for expanding § 1252(b)(9) beyond the scope of removal/deportation orders into the area of an alien's detention. The language of § 1252(b)(9) itself does not indicate that it applies to all claims by aliens including detention. Rather, § 1252(b)(9) specifically discusses actions or proceedings brought "to remove an alien." The language of § 1252(b)(9) therefore appears to apply to removal proceedings, and this court holds that it does not apply to detention.

The court's interpretation is consistent with the statutory scheme. Section § 1252(b)(9) appears under the heading entitled "Judicial review of *orders of removal.*" (emphasis added). The heading under which a section appears aids a court in determining how to apply a certain section. *See Almendarez–Torres v. U.S.,* 523 U.S. 224, 118 S.Ct. 1219, 1226, 140 L.Ed.2d 350 (1998). Section 1231 of the statute, in contrast, explicitly addresses "Detention and removal of aliens ordered removed." Petitioners here challenge their detention, not their final orders of removal or deportation. The petition would appear to be governed by § 1231 by the clear language of the statute. To read § 1252(b)(9) as covering all claims, including claims regarding an alien's detention, would render § 1231 superfluous. Such an interpretation is to be avoided. *See, e.g., Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979), overruled in part on other grounds by *Webster v. Reproductive Health Services,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989).

▆▆ Moreover, to read § 1252(b)(9) as revoking this court's jurisdiction to re-

view constitutional challenges to detention, which is at most a collateral aspect of the deportation procedure, and to consequently immunize the INS's implementation of federal immigration laws from due process challenges, "would raise difficult constitutional issues." *Walters v. Reno*, 145 F.3d 1032, 1052 (9th Cir.1998), *cert. denied,* — U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999) (quoting *Catholic Social Services, Inc. v. Reno*, 134 F.3d 921, 927 (9th Cir. 1997)). It is well-established that "when constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the 'extraordinary' step of foreclosing jurisdiction unless Congress' intent to do so is manifested by 'clear and convincing' evidence." *Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977) (quoting in part *Weinberger v. Salfi*, 422 U.S. 749, 762, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). Instead, statutes should be interpreted to preserve the authority of courts to consider constitutional claims when possible. *See Walters*, 145 F.3d at 1052 (quoting *American–Arab Anti–Discrimination Committee v. Reno*, 119 F.3d 1367, 1372 (9th Cir.1997)) (overruled on other grounds, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999)).

■ Generally, repeal of habeas jurisdiction requires a more explicit statement from Congress than § 1252(b)(9), which does not mention detention proceedings at all. *See, e.g., Felker v. Turpin*, 518 U.S. 651, 660–665, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (implied repeals of habeas jurisdiction are disfavored). Article I, Section 9, Clause 2 of the Constitution prohibits suspension of the writ of habeas corpus except in extraordinary circumstances. Respondents' position would require this court to examine whether the writ is being suspended and/or whether this particular suspension is permissible in light of the Suspension Clause. As the First Circuit noted, a habeas challenge to detention by the executive is at the "historical core of the Suspension Clause." *Goncalves v. Reno*, 144 F.3d 110, 123 (1st Cir.1998) (citing, *inter alia, Felker*), *cert. de-*

*nied,* — U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). This general reluctance to suspend habeas corpus jurisdiction corroborates the court's interpretation, as outlined above. Accordingly, this court holds that § 1252(b)(9) does not deprive this court of jurisdiction to hear Petitioners' claims regarding his continued detention.

### 3. Section 1226(e)

Respondents also argue that § 1226(e) renders the discretionary bond determinations of the Attorney General not judicially reviewable. It is unclear to the court what the relevance of this argument is because Petitioners do not challenge a bond determination here; they challenge the constitutionality of their detention. Further, Petitioners are being held pursuant to § 1231, which governs the detention of aliens under final orders of removal. Because this case does not involve the Attorney General's exercise of "discretionary judgment" as delineated in § 1226(e), this court finds § 1226(e) is inapplicable to the present petition. Accordingly, this court retains its habeas jurisdiction pursuant to 28 U.S.C. § 2241.

### B. Exhaustion of Administrative Remedies

Respondents argue that Petitioners have not exhausted their administrative remedies because they have not appealed their custody review decisions to the BIA. In support of its argument, the government notes that administrative exhaustion requirements arise from either explicit statutory language or from the administrative scheme providing for agency relief. *See McKart v. United States*, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Respondents point to regulations under which Petitioners can request the INS district director to conduct a custody review, *see* 8 C.F.R. § 236.1(d)(2), and regulations that provide for appeal from an adverse decision to the BIA. *See* 8 C.F.R. §§ 3.3(a), 236.1(d)(3)(iii). Respondents point to no

statutory language that requires administrative exhaustion, however.

■ Where a statute does not explicitly require administrative exhaustion, the decision of whether to require exhaustion is left to judicial discretion. *See Wang v. Reno*, 81 F.3d 808, 814 (9th Cir.1996). In *Wang*, the Ninth Circuit held that due process challenges to INS procedures do not require administrative exhaustion because the constitutional challenge to INS procedure does not implicate a review of a deportation order. *See id.* Additionally, where there is no explicit requirement of exhaustion prior to seeking judicial review, then intra-agency review of a decision is optional. *See Young v. Reno*, 114 F.3d 879, 882 (9th Cir.1997). In the present case, there is no explicit provision that requires administrative review prior to the filing of a judicial action.

■ Moreover, and more importantly, Petitioners' constitutional claims will not be addressed through administrative processes. "No administrative proceeding exists to consider [the lawfulness of Petitioners' continued detention.] Under these circumstances, no exhaustion requirement should be imposed." *Phan v. Reno*, 56 F.Supp.2d 1149, 1153 (W.D.Wash.1999) (citing *McCarthy v. Madigan*, 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). Additionally, like in *Wang*, a review of a detention order here does not implicate the removal orders. A review of Petitioners' detention pending deportation is entirely consistent with the deportation orders. Thus, the court finds that Petitioners are not required to exhaust their administrative remedies prior to seeking judicial review of their continued detention. *See, e.g., Tam v. INS*, 14 F.Supp.2d 1184, 1189 (E.D.Cal.1998); *Morisath v. Smith*, 988 F.Supp. 1333, 1340 (W.D.Wash. 1997).

## C. Statutory Construction

Because all four Petitioners are under final orders of deportation or removal, their current detention is governed by 8 U.S.C. § 1231. Section 1231(a) provides for a removal period of 90 days, i.e., when an alien is ordered removed, the Attorney General shall remove the alien from the United States within 90 days, beginning when the order of removal becomes administratively final, when any judicial review of the order is completed, or when the alien is released from detention or confinement (except under an immigration process), whichever is latest. 8 U.S.C. § 1231(a)(1). The Attorney General is required to detain the alien during the removal period. 8 U.S.C. § 1231(a)(2). If the alien is not removed within the removal period, "the alien, pending removal, is subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Section 1231(a)(6) provides for the detention of inadmissible or criminal aliens as follows:

An alien ordered removed who is inadmissible under section 11 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3). 8 U.S.C. § 1231(a)(6).

According to 8 C.F.R. § 236.1(d)(1), once an order of removal becomes administratively final, the district director makes determinations regarding custody and bond. "After an order becomes administratively final, the respondent may request review by the district director of the conditions of his or her release." 8 C.F.R. § 236.1(d)(2)(ii). The district director may continue in custody any alien removable under section 237(a)(1)(C), 237(a)(2), or 237(a)(4) of the Act beyond the removal period; however, if such an alien "demonstrates by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk, the district director may, in the exercise of discretion, order the alien released from custody on such conditions as the

district director may prescribe ...." 8 C.F.R. § 241.4. In making that decision, the district director can consider the following, non-exclusive factors: (1) nature and seriousness of the alien's criminal convictions; (2) other criminal history; (3) sentence imposed and time served; (4) history of failure to appear for court; (5) probation history; (6) disciplinary problems while incarcerated; (7) evidence of rehabilitation or recidivism; (8) equities in the United States; and (9) prior immigration violations and history. *See id.*

On August 6, 1999, the INS announced detailed interim procedures for detainees whose departure cannot be effected within the removal period, and its intention to promulgate regulations to the same effect. *See* Interim Procedures, Resp. Exh. G. The Interim Procedures provide for, among other things: (1) 30 days written notice of the review, specifying the factors to be considered and explaining that the alien will be provided the opportunity to demonstrate by clear and convincing evidence that he is not a threat to the community and is likely to comply with the removal order; (2) custody reviews every six months, alternating between District Director file reviews and a review that includes the opportunity for an interview at the alien's request; (3) a requirement that the alien be advised that he may submit any information relevant to support his request for release from detention, and that he may be represented by an attorney or other person; (4) custody determinations will be made by weighing favorable and adverse factors to determine whether the detainee has demonstrated by clear and convincing evidence that he does not pose a threat to the community, and is likely to comply with the removal order; and (5) written notification of a decision within 30 days of the District Director's custody review that clearly delineates the factors presented by the alien in support of his release, and the reasons for the District Director's decision. *See* Interim Procedures, Resp. Exh. G.

Petitioners argue that this court should follow the reasoning of *Sok v. Immigra-*

*tion and Naturalization Service,* 67 F.Supp.2d 1166 (E.D.Cal.1999), which construed § 1231(a)(6) as "authorizing detention of deportable aliens beyond the removal period only in cases where there is a reasonable possibility that removal will be effected in the foreseeable future." *Id.* at 1169. The *Sok* court found that construing § 1231(a)(6) to permit the Attorney General to detain deportable aliens beyond the removal period with no time limitations "would raise a serious constitutional question." *Id.* at 1168 (citing *Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) for the proposition that Congress cannot disregard constitutional rights of aliens to life, liberty, and property without due process of law). The *Sok* court found that it had to construe the statute to avoid such constitutional problems unless such a construction contravened Congress' intent, and consequently found that the Attorney General did not have statutory authority to detain deportable aliens indefinitely. *Id.* at 1169.

 The court is not convinced by the *Sok* court's analysis regarding Congressional intent, and is therefore unwilling to employ the statutory construction doctrine of "avoidance" here. The statute states: "An alien ordered removed who is ... removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period ...." 8 U.S.C. § 1231(a)(6). Congress clearly grants the Attorney General authority to detain aliens beyond the removal period. The court agrees with the Second Circuit's finding in *Guzman v. Tippy,* 130 F.3d 64, 66 (2d Cir.1997), and the Third Circuit's conclusion in *Chi Thon Ngo v. Immigration and Naturalization Service,* 192 F.3d 390, 400 (3d Cir.1999) that Congress granted the Attorney General the authority to subject aliens under final orders of removal to prolonged detention. The court will

therefore turn to Petitioners' constitutional arguments.

### D. Substantive Due Process

■ Petitioners argue that the Due Process Clause forbids the prolonged and indefinite detention of a deportable alien when it becomes apparent that the government will not be able to remove the alien in the foreseeable future because the detention is excessive in relation to the government's purpose. The Due Process Clause of the Fifth Amendment states that "no person shall ... be deprived of life, liberty, or property, without due process of law ...." U.S. Const. amend. V. Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience' or interferes with rights 'implicit in the concept of ordered liberty.'" *United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (internal citations omitted). The government is forbidden from "infring[ing] certain 'fundamental' liberty interests ... unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 303, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

The Supreme Court has not addressed whether deportable aliens have a fundamental liberty interest in being free from indefinite detention. Few circuit courts have addressed the question of the constitutionality of indefinitely detaining resident aliens under final orders of deportation or removal. In *Zadvydas v. Underdown*, the Fifth Circuit reviewed the habeas corpus petition of a resident alien who had been ordered deported. See 185 F.3d 279 (5th Cir.1999). Both German and Lithuanian authorities had declined to accept the petitioner in *Zadvydas*. The Fifth Circuit found that once "a final decision to deport the once resident alien has been made and stands unchallenged," the difference between excludable aliens and resident aliens is insignificant or nonexistent. *Zadvydas*, 185 F.3d at 297. The court therefore examined existing case law regarding excludable aliens and noted that the peti-

tioner's detention was within the core area of the government's plenary immigration power in finding no violation of substantive process. *Id.* The court concluded that "the government may detain a resident alien based on either danger to the community or risk of flight while good faith efforts to effectuate the alien's deportation continue and reasonable parole and periodic review procedures are in place." *Id.*

The Third Circuit addressed a challenge by an excludable alien, who had committed an enumerated crime, to his prolonged detention as a result of his country of origin refusing him entry. See *Chi Thon Ngo v. Immigration and Naturalization Service*, 192 F.3d 390 (3d Cir.1999). The court held that certain excludable aliens could be detained for lengthy periods "when removal is beyond the control of the INS, provided that appropriate provisions for parole are available." *Id.* at 398. The court noted, however, that its holding was limited to excludable aliens and that it expressed no view on situations involving deportable aliens. See *id.* at 398 n.7.

■ This court is not persuaded that excludable and deportable aliens should be treated identically. "Once an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly." *Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). For example, an alien being deported has several rights that an alien being excluded does not, including designating the country of deportation, the possibility of departing voluntarily, and the ability to seek suspension of deportation. *Id.* at 26, 103 S.Ct. 321. The reason excludable aliens do not enjoy most constitutional rights is the "entry fiction": "because excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows." *Barrera–Echavarria v. Rison*, 44

**1110**

F.3d 1441, 1450 (9th Cir.1995). Permanent resident aliens, on the other hand, have already been admitted to the country and are therefore "present on United States territory." This court is not persuaded by the Fifth Circuit's conclusion in Zadvydas that a final order of deportation erases any rights a permanent resident alien previously possessed. "[G]iven that resident aliens have acknowledged constitutional rights, we cannot make those rights vanish by the legal expedient of a final order of deportation." Vo v. Greene, 63 F.Supp.2d 1278, 1283 (D.Colo.1999). It does not "reasonably follow," then, as in the case of an excludable alien, that a deportable alien has no substantive right to be free from immigration detention. Rather, this court concludes that a deportable alien retains sufficient rights to seek the due process protection of the Fifth Amendment.

 Detention is a deprivation of liberty. "Freedom from physical restraint 'has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.'" Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 2079, 138 L.Ed.2d 501 (1997) (quoting Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)). Liberty interests are not sacrosanct, however; "the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest." United States v. Salerno, 481 U.S. 739, 748, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). For example, in times of war or insurrection, the government may detain individuals it deems dangerous. Id. (citing Ludecke v. Watkins, 335 U.S. 160, 68 S.Ct. 1429, 92 L.Ed. 1881 (1948)). Also, detention of dangerous persons may be permitted if sufficiently compelling governmental interests exist. Salerno, 481 U.S. at 748, 107 S.Ct. 2095 (citing, inter alia, Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972)). The constitutionality of detention

therefore rests in large part on its purpose. In detention cases, to determine whether a deprivation of liberty is impermissible punishment or permissible regulation, the court must examine whether the deprivation of liberty is imposed for the purpose of punishment or in furtherance of regulatory goals; and if in furtherance of regulatory goals, whether the deprivation is excessive in relation to the purpose for the deprivation. See Salerno, 481 U.S. at 747, 107 S.Ct. 2095.

The Western District of Washington issued a five-judge joint order in Phan v. Reno to establish a framework for analyzing habeas corpus petitions by deportable aliens subject to indefinite detention. 56 F.Supp.2d 1149 (W.D.Wash.1999). The Phan decision found the distinction between excludable and deportable aliens to be critical. Id. at 1154. By observing the excludable/deportable alien distinction, the Phan panel accorded far less weight to the plenary power doctrine, which counsels judicial deference to the executive and legislative branches on substantive immigration matters. Id. at 1155. In addition, since the court found petitioners' liberty interest to be fundamental, it applied heightened scrutiny, not deferential review, to petitioners' detention. Id. The panel concluded that "the critical inquiry, therefore, is whether an alien's detention is excessive in relation to [the] governmental interests" of "(1) ensuring the removal of aliens ordered deported; (2) preventing flight prior to deportation; and (3) protecting the public from dangerous felons." Id. at 1155–56. The panel found that detention was lawful only in aid of deportation; therefore, if deportation will never occur, indefinite detention of a deportable alien is excessive. Id. at 1156.

 This court agrees with the Phan panel and holds that although an excludable alien may have no right to be free from immigration detention, the same cannot be categorically said of a deportable alien. A deportable alien who is indefinitely continued in INS custody suffers a

deprivation of liberty. To determine whether such a restriction is "impermissible punishment" or "permissible regulation," the court weighs the liberty interest of the deportable alien against the government's interest in continued detention; the court examines whether there is a rational connection between the restriction placed on an alien's liberty and the purpose for the restriction and determines whether the restriction is excessive in relation to that purpose. *Salerno,* 481 U.S. at 747, 107 S.Ct. 2095.

The court must therefore examine the purpose of the deprivation here. No party argues that the detention is imposed for the purpose of punishment, and the court concludes that the INS's goals in detaining Petitioners are regulatory. Although the INS does not cite this interest in its return, the primary regulatory purpose of detaining deportable aliens appears to be ensuring their deportation and removal. *See Phan,* 56 F.Supp.2d at 1155. In addition, detention eliminates the risk that deportable aliens will flee and escape deportation. Further, detention serves to protect the community from those who pose a danger. The government argues here that because "Petitioners have demonstrated themselves to be dangerous criminals," the INS has a compelling interest in continuing to detain them "until they can convince the district director that they pose no danger to the community." (Resp.Return, p. 10).

The next question is whether the detention is excessive in relation to the government's purposes. In the situation where deportation will be foreseeably effected, detention is not excessive in relation to that purpose. Where deportation is not foreseeable, likely, and realistic, however, detention becomes increasingly excessive in relation to a detainee's liberty interest. The *Phan* panel concluded that: "dangerousness and flight risk are ... permissible considerations and may, in certain situations, warrant continued detention, but only if there is a realistic chance that an alien will be deported." *Phan,* 56

F.Supp.2d at 1156. Although there may be other considerations warranting continued detention if deportation is realistic, the issue here is who bears what burden if deportation is *not* realistic. Where effecting removal is frustrated to such an extent, the petitioner should presumptively be released unless the government can show why he or she should not be released. In such a case, the government should bear the burden of showing that achieving its remaining interests, for example, preventing flight and protecting the community, are not excessive in relation to the restriction on Petitioners' liberty.

In the instant case, the record establishes that there is no real chance that any of these aliens will be deported in the foreseeable future because no extradition treaty with Vietnam exists, and although there have been negotiations to develop a treaty for several years, the State Department cannot give any reasonable projection as to when, if ever, a treaty will be agreed upon. (Resp.Exh. F). Petitioners' detention must be evaluated in light of the fact that they have been detained for periods of time ranging from almost three years to almost four years, Vietnam has not responded to requests for travel documents, there is no treaty with Vietnam in place, no projected date when a treaty will be in place, and no country that will accept them. When there is no realistic chance that a deportable alien will be deported in the foreseeable future, the burden should shift to the INS to demonstrate such a compelling interest in detention that detention is not excessive in relation to the alien's liberty interest.

Fashioning the remedy in this case is troublesome. However, on the record before it, the court cannot conclude that the INS has any compelling reason to continue to detain Petitioners. With respect to all four Petitioners, it is unclear to the court why the procedures set forth in 8 C.F.R. § 241.5 are not sufficient to prevent Petitioners from absconding. It is equally unclear to the court, based on the record before it, that Petitioners pose a danger to the community.

For example, with respect to Petitioner Manh Nguyen, in a file review dated March 31, 1999, the reviewing officer found that Petitioner should remain in custody and in the section entitled "basis for conclusions" stated: "Mr Nguyen has been convicted of a particularly serious crime involving a firearm. The file review reflects that he was active participant in an armed robbery where a firearm was fired in a negligent manner. His criminal convictions have escalated in violence from burglary to assault with a firearm. Based on the foregoing information gleaned from Mr. Nguyen's service file, release at this time is not recommended." (Resp.Exh. B, p. 19.) In a file review dated October 6, 1999, the reviewing officer found that Petitioner should remain in custody because: "Mr. Nguyen had been convicted of a very serious crime with the use of a firearm. Subject [sic] file reflects that he was an active participate [sic] in an Armed Robbery where a firearm was fired in a negligent manner. Subject's criminal convictions have escalated in a very violent manner. From Burglary to Assault with a Firearm. Based on this I recommend the continued detention of Mr. Nguyen, I believe it is in the public's interest for him to remain in the custody of the United States Immigration and Naturalization Service until removed from the United States." (Id.). This latter conclusion demonstrates the unwillingness to consider Petitioner Manh Nguyen's release, regardless of any evidence he might present that he is not a danger to society, solely on the basis of Petitioner's criminal history.

Petitioner Viet Nguyen's file does not appear to contain any paperwork regarding a 90 day custody review, with the exception of an August 5, 1999 "notice of custody decision," informing Petitioner Viet Nguyen that he shall be continued to be detained. (Resp.Exh. C, p. 9).

Petitioner Van Nguyen's file contains a custody review dated March 31, 1999, which concludes that Petitioner should remain in custody because: "Subject appear [sic] to have started his criminal career about 9 years after he was admitted as a refugee, he has committed a very serious crime of Assault with a Firearm, in which he was sentenced to 7 years of confinement. At this time, release is not recommended." (Resp.Exh. D, p. 15). On July 1, 1999, Petitioner Van Nguyen was the subject of an examination by the Criminal Alien Review Panel. Using a revised form, the two members composing the panel recommended that Petitioner be released. Under the heading "basis for conclusions" the report stated: "Mr. Nguyen was truthful in his admission of his part in the crimes committed. He appears to be truly sorry for his brief life of crime. He states that he has dishonored his family and must regain his honor[.] He did not try to blame his problems on anybody but himself." (Resp.Exh. D, p. 17). Under the heading "justification for panel recommendation" the report stated: "Although Mr. Nguyen's conviction is of a serious nature, this panel recommends release for the following reasons. Mr. Nguyen has been convicted of one minor crime and one serious crime. These are the only convictions in his record. While incarcerated he has made a valiant effort to rehabilitate himself by taking as many courses as possible offered by the institution thereby having some training in computers that may help him to obtain employment. Mr. Nguyen does not appear to be a violent person and would benefit from a home environment." (Id.). Under the heading "panel recommendation" the report stated: "This panel is able to conclude that the INS detainee, upon being released from INS custody, will not pose a threat to the community." (Id.). On August 3, 1999, however, with no explanation, the assistant district director ordered that Petitioner should continue to be detained. (Id., p. 19).

Petitioner Phan received a file review on July 2, 1999. Under "basis for conclusions" the report stated: "Mr Phan has been convicted of a very serious aggravate [sic] felon [sic] charge. However, he has

strong ties in the area that can help him in the transition from custody if released. He has an opportunity to work with Balboa Park, or with his sister in a Vietnamese Restaurant in New Jersey. Mr Phan has a limited criminal history. But, due to the seriousness of the crime, and how he explained how it happen [sic], made he [sic] feel that he would be a threat to the community, and at this time should remain in service custody." (Resp.Exh. E, p. 15).

Each determination that each Petitioner should remain in custody appears to have been predicated solely on each Petitioner's criminal history. In the case of Petitioner Van Nguyen, it is entirely unclear to the court what the decision to continue to detain Petitioner was based on because the underlying report recommended release. An alien's criminal history does not militate a finding of danger to the community. This court concludes that after some length of time in custody, where deportation is not reasonably foreseeable, a petitioner's liberty interest surpasses the INS's diminished interest in ensuring deportation, and detention becomes punitive in relation to the INS's regulatory goals. This court does not decide how long a petitioner must be in custody before his or her rights outweigh the INS's interest in effecting deportation. In the case at hand, it is clear to the court that at this point, Petitioners have been detained for well over two years, and in some cases almost four, with no foreseeable possibility of deportation, and that their liberty interests surpass the INS's interest in ensuring their deportation. Where a deportable alien's deportation is not possible or foreseeable, it is up to the INS to show that the alien's detention is not excessive in relation to the alleged purpose of his continued detention.

### E. Procedural Due Process

The court does not reach Petitioners' procedural due process arguments here. When a restriction on liberty survives substantive due process scrutiny, the court must examine whether the restriction is implemented in a procedurally fair manner. *See Salerno,* 481 U.S. at 746, 107 S.Ct. 2095. Because the court asks for a further showing with respect to substantive due process, the court defers addressing Petitioners' procedural due process arguments until it resolves the issue of substantive due process.

### III. Conclusion

Where a petitioner's interest in liberty outweighs the INS's reduced interest in deportation, the presumption is that the petitioner should be released under conditions of supervision as determined by the district director in accordance with 8 C.F.R. § 241.5, unless the INS can demonstrate an alternative, compelling interest in detention. Accordingly, this court ORDERS Respondents to SHOW CAUSE why Petitioners should not be released. IT IS FURTHER ORDERED that the filing of the foregoing shall be made no later than February 14, 2000. IT IS FURTHER ORDERED that if Petitioners wish to reply to Respondents' return, Petitioners must file a reply no later than February 22, 2000.

**IT IS SO ORDERED.**