PUBLISH

UNITED STATES COURT OF APPEALS

**Filed 12/24/96**

TENTH CIRCUIT

_____

PUEBLO OF SAN ILDEFONSO,

        Plaintiff-Appellant,

v.

        No. 95-2197

DANIEL RIDLON and
REGENTS OF THE
UNIVERSITY OF CALIFORNIA,

        Defendants-Appellees.

_____

Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV 93-1467)

_____

Peter C. Chestnut, Albuquerque, New Mexico, for Plaintiff-Appellant.

Stephen D. Aarons, Santa Fe, New Mexico for Defendants-Appellees.

_____

Before TACHA, Circuit Judge, and GODBOLD[*] and HOLLOWAY, Senior
Circuit Judges.

_____

---

[*] The Honorable John C. Godbold, Senior United States Circuit Judge for the
Eleventh Circuit Court of Appeals, sitting by designation.

GODBOLD, Senior Circuit Judge:

Appellant Pueblo of San Ildefonso ("Pueblo"), a federally recognized Indian tribe, filed an action under 25 U.S.C. § 3001-3013, the Native American Graves Protection and Repatriation Act ("NAGPRA"), to secure the return of a piece of Native American pottery from Appellees Daniel Ridlon and the Regents of the University of California. On cross-motions for summary judgment the District Court construed Ridlon's motion as a motion to dismiss for want of subject matter jurisdiction and dismissed the Pueblo's action pursuant to F.R.C.P. 12(b)(1). We vacate the judgment of the district court.

## I. Factual Background

In 1978 twelve-year old Daniel Ridlon discovered a piece of Native American pottery while hiking on property owned by Los Alamos County, New Mexico. The pottery consists of two ancient bowls sealed together that contain a bundle of macaw feathers tied with yucca twine. Shortly after his discovery Ridlon turned the pottery over to the Bradbury Museum, a federally-funded museum operated by the Regents of the University of California. The Museum has continually possessed and displayed the pottery since shortly after its discovery in 1978.

In 1988 the Museum refused Ridlon's demands for return of the pottery and Ridlon successfully sued the Museum and Los Alamos County in New Mexico

state court for conversion. See Opinion of the Federal District Court, No. 93-1467, at 2 (D.N.M. Sept. 14, 1995). However, the state court vacated its judgment and allowed the Pueblo to intervene asserting a right to repatriation of the pottery under NAGPRA. Id. Los Alamos County subsequently assigned its rights in the pottery to the Pueblo. The state court concluded that it lacked jurisdiction over the NAGPRA claim and dismissed the action without prejudice. Id.

Thereafter the Pueblo filed the present action seeking repatriation under NAGPRA, protection of its property interest under the Treaty of Guadalupe-Hidalgo, and declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The U.S. District Court, D.N.M., dismissed the action, finding that neither NAGPRA nor the treaty provided an adequate basis for federal subject matter jurisdiction. Id. at 4. The court also declined to exercise supplemental jurisdiction over the parties' state law ownership claims. Id. at 6. Because resolution of the NAGPRA issue is determinative of this matter, we do not reach the Pueblo's other grounds for appeal.

We exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1291 and NAGPRA's jurisdictional and repatriation provisions, 25 U.S.C. §§ 3013 and 3005(a) respectively. Section 3013 vests federal courts with jurisdiction over "any action brought by any person alleging a violation of this chapter." The Pueblo claims a violation of NAGPRA's repatriation provision, § 3005(a), which

-3-

applies to "Native American human remains and objects possessed or controlled by Federal agencies and museums." Since the Bradbury Museum is a "museum" as defined by NAGPRA[1] and has possessed and controlled the pottery since shortly after its discovery, the district court has a basis for subject matter jurisdiction over the Pueblo's repatriation claim.

## II. Native American Graves Protection & Repatriation Act

Enacted in 1990, NAGPRA safeguards the rights of Native Americans by protecting tribal burial sites and rights to items of cultural significance to Native Americans. See 43 C.F.R. § 10.1 (1995). Cultural items protected under NAGPRA include Native American human remains, funerary objects, sacred objects, and objects of cultural patrimony.[2] 25 U.S.C. § 3001(3)(1990). The Pueblo asserts that the pottery is an object of cultural patrimony and that the Regents had no right to possession of the pottery under NAGPRA. Brief of the

---

[1] Section 3001(8) defines "museum" as "any institution or State or local government agency (including any institution of higher learning) that receives federal funds and has possession of, or control over, Native American cultural items." 25 U.S.C. § 3001(8)(1990).

[2] An item of cultural patrimony is "an object having ongoing historical, traditional, or cultural importance central to the Native American group or culture itself, rather than property owned by an individual Native American, and which, therefore, cannot be alienated, appropriated, or conveyed by any individual regardless of whether or not the individual is a member of the Indian tribe or Native Hawaiian organization and such object shall have been considered inalienable by such Native American group at the time the object was separated from such group." 25 U.S.C. § 3001(3)(D).

Pueblo at 6.

NAGPRA has two distinct schemes governing the return of Native American cultural items to tribes, with the analysis turning upon whether the item is presently held by a federal agency or museum or is discovered on federal lands after November 16, 1990, NAGPRA's effective date. First, the Act addresses items excavated on federal lands after November 16, 1990 and enables Native American groups affiliated with those items to claim ownership. See 43 C.F.R. § 10.1 (1995); H.R. Rep. No. 101-877, 101st Cong., 2d Sess. (1990), *reprinted in* 1990 U.S.C.C.A.N. 4367, 4368. Second, NAGPRA provides for repatriation of cultural items currently held by federal agencies, including federally-funded museums. Id.

The parties dispute the applicability of NAGPRA. The district court found that the Pueblo's claim fell short of providing an adequate basis of subject matter jurisdiction. Op. of the Dist. Ct. at 4. The court relied upon NAGPRA's ownership provision which limits the effect of that section to ". . . Native American cultural items which are excavated or discovered on Federal or tribal lands after November 16, 1990 . . ." Id. (citing 25 U.S.C. § 3002(a)). Since "[t]he pottery at issue was discovered prior to the enactment of the NAGPRA on land owned by a county, not the federal government or an Indian tribe," the district court held that it lacked jurisdiction and dismissed the case. Id.

On appeal the Pueblo contends that the district court's reliance on the

-5-

ownership provision was misplaced because the Pueblo brought its claim under NAGPRA's repatriation provisions, 25 U.S.C. §§ 3004 and 3005, which are not limited to items found on federal lands after November 16, 1990. Brief of the Pueblo at 7. NAGPRA requires repatriation of items of cultural patrimony that are presently in the possession or control of federally-funded museums provided other requirements of repatriation are met. See 25 U.S.C. §§ 3004, 3005 (1990).

The Pueblo asserts that NAGPRA's express statutory language, administrative regulations and legislative history support the conclusion that the Pueblo's claim for repatriation of the pottery falls within the purview of NAGPRA and does provide a basis for federal subject matter jurisdiction. We agree and, therefore, vacate the judgment of the district court.

**A. Statutory Language**

As a preliminary matter, we note that by § 3013, NAGPRA explicitly vests jurisdiction in federal courts:

> The United States district courts shall have jurisdiction over any action brought by any person alleging a violation of this chapter [NAGPRA] and shall have the authority to issue such orders as may be necessary to enforce the provisions of this chapter.

25 U.S.C. § 3013 (1990).

The Pueblo sought repatriation of the pottery pursuant to 25 U.S.C. §§ 3004 and 3005, which address repatriation of objects presently in the possession or control of federal agencies, including federally-funded museums like the

Bradbury Museum. Nothing in the express language of these sections indicates that repatriation is limited by when or where the object subject to repatriation was found. Where statutory language is clear and unambiguous, that language is controlling and courts should not add to that language. U.S. v. Thompson, 941 F.2d 1074, 1077 (10th Cir. 1991); Aulston v. U.S., 915 F.2d 584 (10th Cir. 1990), cert. denied, 500 U.S. 916 (1991). The language of the repatriation section supports federal subject matter jurisdiction in this case.

First, 25 U.S.C. § 3005(a) entitled "Repatriation of Native American human remains and objects possessed or controlled by Federal agencies and museums," provides

> If, pursuant to § 3004 of this title, the cultural
> affiliation with a particular Indian tribe . . .
> is shown with respect to . . . objects of cultural
> patrimony, then the Federal agency or museum, upon
> the request of the Indian tribe . . . and pursuant
> to subsections (b), (c), and (e) of this section,
> shall expeditiously return such objects.

25 U.S.C. § 3005(a)(2)(1990). As the title of § 3005 indicates, repatriation applies to items presently in possession of federally-funded museums, including items possessed on November 16, 1990, NAGPRA's effective date. Unlike the restrictive ownership provision, nowhere does the language of this section suggest that repatriation is limited to post-November 16, 1990 excavations on federal lands. Although the district court correctly concluded that NAGPRA's ownership

provision only applies to items found after November 16, 1990 on federal lands, the court should not have imposed date and location restrictions on repatriation where nothing in NAGPRA's statutory scheme or language requires such limitations.

Second, the only section of the Act that expressly contains a limiting date is the ownership section, § 3002, which relates only to items excavated or discovered on federal lands after November 16, 1990. The district court concluded that, because the pottery was discovered in 1978 on non-federal land, the ownership provision did not apply to the pottery. However, the Pueblo did not sue under the ownership section. The Pueblo sued under § 3005, claiming a right of repatriation of the pottery. Because NAGPRA's express language does not limit repatriation to items found after November 16, 1990, NAGPRA applies to the Pueblo's repatriation claim as a matter of law.

## B. Administrative Interpretations

Administrative interpretations support the Pueblo's contention that repatriation is not limited by when a Native American object was found. First, regulations issued to carry out the provisions of NAGPRA distinguish between ownership and repatriation. "An administrative agency's interpretation of a statute which the agency is entrusted to administer is entitled to considerable deference by a reviewing court." Bernstein v. Sullivan, 914 F.2d 1395, 1400 (10th Cir. 1990).

NAGPRA Regulations are subdivided into two distinct subparts that separately address repatriation and ownership.  Subpart B concerns the disposition of Native American items discovered or excavated, either inadvertently or intentionally, on federal lands after November 16, 1990. 43 C.F.R. §§ 10.3(a) & 10.4(a) (1995).  Subpart C addresses repatriation of Native American objects in possession of federal agencies and museums. 43 C.F.R. §§ 10.8 - 10.10 (1995). Regulations concerning repatriation do not contain a limiting date and, therefore, support the conclusion that the Pueblo stated a claim under NAGPRA to establish federal subject matter jurisdiction.

### III. Conclusion

We VACATE the district court's judgment and REMAND for further proceedings consistent with this opinion.