F I L E D
United States Court of Appeals
Tenth Circuit

FEB 29 2000

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

DUY DAC HO,

        Petitioner-Appellee,

v.

JOSEPH GREENE, District Director,
Immigration and Naturalization
Service,

        Respondent-Appellant.

Nos. 98-1333 and 99-1256

---

LOI TAN NGUYEN,

        Petitioner-Appellee,

v.

JOSEPH GREENE, District Director,
Immigration and Naturalization
Service,

        Respondent-Appellant.

No. 99-1182

-----------------------

AMERICAN IMMIGRATION
LAWYERS ASSOCIATION,
NATIONAL IMMIGRATION
PROJECT OF THE NATIONAL
LAWYER'S GUILD, JUSTICE
INFORMATION CENTER, INC.,
HUMAN RIGHTS WATCH, HUMAN
RIGHTS ADVOCATES, WORLD
ORGANIZATION AGAINST
TORTURE USA, JESUIT REFUGEE
SERVICE, INTERNATIONAL
HUMAN RIGHTS LAW GROUP,
AND THE EXTRADITION AND
HUMAN RIGHTS COMMITTEE OF
THE AMERICAN BRANCH OF THE
INTERNATIONAL LAW
ASSOCIATION, UNIVERSITY OF
COLORADO LEGAL AID &
DEFENDER PROGRAM,

Amici Curiae.

Appeals from the United States District Court
for the District of Colorado
(D.C. Nos. 98-D-861 and 98-D-1342)

Emily Anne Radford, Senior Litigation Counsel, Office of Immigration Litigation,
(Allen W. Hausman, Senior Litigation Counsel; David M. McConnell, Assistant
Director; and H. Bradford Glassman, Trial Attorney, Office of Immigration
Litigation, with her on the briefs), Department of Justice, Washington, D.C., for
Respondent-Appellant.

Judy Rabinovitz, ACLU Immigrants' Rights Project, New York, New York, (Jim
Salvator, Lafayette, Colorado; Wanyong Austin, ACLU Immigrants' Rights
Project, New York, New York; Mark Silverstein, ACLU Foundation of Colorado,

Denver, Colorado; Kathryn Palamountain, ACLU Immigrants' Rights Project, San Francisco, California, with her on the briefs), for Petitioners-Appellees.

Ken Stern, Stern & Elkind, Denver, Colorado; Christine C. Bartlett, Justice Information Center, Denver, Colorado; and Norman Aaronson, Legal Aid & Defender Program, University of Colorado, Boulder, Colorado, filed an Amici Curiae Brief for American Immigration Lawyers Association, National Lawyer's Guild, Justice Information Center, and University of Colorado Legal Aid & Defender Program.

Sheldon Friedman, Isaacson, Rosenbaum, Woods & Levy, P.C., Denver, Colorado; Paul L. Hoffman, Bostwick & Hoffman, LLP, Santa Monica, California; and William J. Aceves, California Western School of Law, San Diego, California, filed an Amici Curiae Brief for Human Rights Watch, Human Rights Advocates, World Organization Against Torture USA, Jesuit Refugee Service, International Human Rights Law Group, and The Extradition and Human Rights Committee of the American Branch of the International Law Association.

---

Before **BRORBY**, **BRISCOE**, and **MURPHY**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

Petitioners-Appellees, Duy Dac Ho ("Ho") and Loi Tan Nguyen ("Nguyen") (collectively "Petitioners") were each convicted of aggravated felonies and ordered removed from the United States. Upon release from state prison, each Petitioner was taken into custody by the Immigration and Naturalization Service ("INS"). Because their country of origin, Vietnam, would not accept their return, Petitioners were detained in an INS detention facility. Petitioners each filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In their habeas

petitions, Petitioners did not contest their deportability. Rather, both argued that the Attorney General[1] lacks statutory authority to detain them indefinitely pending execution of the final removal order and that their continued detention violates the Constitution of the United States. The district court granted both petitions[2] and ordered Petitioners released from INS custody on bond. The INS appealed and the cases were consolidated. This appeal presents the question of whether the Attorney General has the statutory authority to indefinitely detain a removable alien. Because this court determines such detention to be statutorily authorized, we also address whether such detention violates any substantive or procedural due process rights afforded removable aliens by the Fifth Amendment. Exercising jurisdiction under 28 U.S.C. § 1291, we **reverse**.

---

[1]The Attorney General is charged with the administration and enforcement of all laws relating to the immigration and naturalization of aliens. *See* 8 U.S.C. § 1103(a)(1). Pursuant to the authority conferred on her by 8 U.S.C. § 1103(a), the Attorney General has delegated her authority to enforce all laws relating to the immigration and naturalization of aliens to the Commissioner of the INS who, in turn, may redelegate any such authority to any other officer or employee of the INS. *See* 8 C.F.R. § 2.1.

[2]Although the district court granted both habeas petitions to the extent Petitioners sought release on bail, the court denied the requests for attorneys' fees and costs made in the petitions. The district court's denial of attorneys' fees and costs has not been appealed by either Ho or Nguyen.

**FACTUAL BACKGROUND**

    **A.    No. 98-1333**

Petitioner-Appellee Ho is a citizen and national of Vietnam. Ho lawfully entered the United States as a refugee in 1985. Ho has never applied for and, consequently, never obtained lawful permanent resident status. In 1988, Ho was sentenced to thirty-three months' imprisonment for aggravated robbery, assault, and burglary. In 1992, he was sentenced to an additional seventy-eight months' imprisonment for a second aggravated robbery committed in 1991. On June 24, 1996, following an exclusion hearing, Ho was ordered excluded from the United States. Ho did not appeal the order of exclusion. Ho was released from the custody of the Minnesota Department of Corrections to the INS for deportation and has been in INS custody since June 1996. The INS formally requested travel documents for Ho from the Vietnamese government on July 11, 1996. The Vietnamese government has not issued the requested travel documents. On January 22, 1998, the INS denied Ho's request for immigration parole, stating there were no "urgent humanitarian reasons" justifying parole and that Ho had failed to demonstrate that he would not be a public danger, or that he would not flee.

On April 16, 1998, Ho filed a petition with the United States District Court for the District of Colorado seeking a writ of habeas corpus. In his petition, Ho

alleged that his continued detention by the INS was not authorized by statute and violated his constitutional due process rights. The district court, relying on this court's opinion in *Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382 (10th Cir. 1981), granted the writ and ordered Ho released on bond. The INS appealed.

**B.     No. 99-1182**

Petitioner-Appellee Nguyen is a native and citizen of Vietnam. Nguyen entered the United States as a refugee in 1981 and obtained lawful permanent resident status in 1984. On January 5, 1993, Nguyen was convicted of aggravated robbery and vehicular eluding and sentenced to a thirteen-year term of imprisonment. The INS initiated deportation proceedings against Nguyen on January 10, 1994, and he was ordered deported on January 8, 1996. Nguyen appealed this decision but his appeal was dismissed on January 10, 1997 and his motion for reconsideration was denied on July 7, 1997. Nguyen was released from incarceration by the state of Colorado and paroled into the custody of the INS for deportation on August 12, 1997. The INS formally requested travel documents for Nguyen from the Vietnamese government on October 2, 1997. The Vietnamese government has not issued the requested travel documents.

On at least two occasions, Nguyen has requested to be released from INS custody. The INS has denied each of Nguyen's requests for release. In December, 1998, the INS's Acting District Director for the Denver District denied

Nguyen's most recent request for release, concluding that Nguyen failed to show, by clear and convincing evidence, that he does not pose a safety or flight risk if released.

On June 22, 1998, Nguyen filed a petition with the United States District Court for the District of Colorado seeking a writ of habeas corpus and alleging that his continued detention was not authorized by statute and violated his Fifth Amendment substantive and procedural due process rights. The district court, relying on this court's opinion in *Rodriguez-Fernandez*, granted the writ and ordered Nguyen released on bond. *See id*. The INS brought this appeal.

## II. DISCUSSION

### A. Jurisdiction

Although neither Petitioners nor the INS challenge the jurisdiction of either the district court or this court, this court must address this predicate question before proceeding to the merits of these appeals. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 73 (1997).

On September 30, 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *See* Pub. L. No. 104-208, 110 Stat. 3009, 3009-546 (1996). IIRIRA made comprehensive changes to the Immigration and Nationality Act (INA). As a result of the enactment of IIRIRA, no fewer than three versions of the INA may govern the jurisdictional question

before this court. Generally, the permanent provisions of IIRIRA apply only to removal proceedings commenced after April 1, 1997, IIRIRA's effective date. *See* IIRIRA § 309(a), Pub. L. No. 104-208, 110 Stat. 3009, 3009-625. Exclusion proceedings against Ho were commenced prior to IIRIRA's April 1, 1997 general effective date. Deportation proceedings against Nguyen were also commenced prior to April 1, 1997. Arguably, therefore, the permanent provisions of IIRIRA do not govern judicial review of the § 2241 habeas petitions filed by Ho and Nguyen. At least one Circuit Court of Appeals, however, has concluded that the effective-date provisions of IIRIRA are ambiguous and has held that the permanent provisions of IIRIRA govern judicial review of habeas corpus petitions filed by aliens against whom removal proceedings had commenced prior to April 1, 1997 but who had also *received* final removal orders before that date. *See Zadvydas v. Underdown*, 185 F.3d 279, 287 & 286 n.7 (5th Cir.1999). Because both Ho and Nguyen received final removal orders before April 1, 1997,[3] the permanent provisions of IIRIRA thus may apply.

IIRIRA also contains transitional rules applicable to removal proceedings commenced before April 1, 1997, in which deportation orders became

---

[3]Ho did not appeal the final order of exclusion which was entered against him on June 24, 1996. Nguyen's appeal of his final order was dismissed on January 10, 1997. His motion for reconsideration was denied on July 7, 1997 as untimely.

administratively final after October 30, 1996.  *See* IIRIRA § 309(c)(4), Pub. L. No. 104-208, 110 Stat. 3009, 3009-626.  Because Ho's removal order became final before October 30, 1996, the transitional rules do not apply to his petition. Removal proceedings against Nguyen, however, commenced prior to April 1, 1997, and his deportation order became final after October 30, 1996.  The transitional rules, thus, may govern judicial review of Nguyen's habeas petition. We need not and do not decide which version of the INA applies because neither the permanent, transitional, nor pre-IIRIRA provisions of the INA bar judicial review of the claims brought by Ho and Nguyen in their § 2241 habeas petitions.

Before IIRIRA, district courts had jurisdiction over § 2241 habeas petitions like those brought by Petitioners.  *See Galaviz-Median v. Wooten*, 27 F.2d 487, 491-92 (10th Cir. 1994) (holding that district courts have jurisdiction over habeas petitions in which a petitioner in INS detention raises constitutional due process claims).  Additionally, assuming, without deciding, that IIRIRA's transitional rules apply to Nguyen, the district court had jurisdiction over Nguyen's § 2241 habeas petition.  *See Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1146 (10th Cir. 1999) (holding that IIRIRA's transitional rules do not eliminate or alter traditional habeas review available under § 2241).  Therefore, to the extent either the pre-IIRIRA provisions of the INA or the transitional provisions of IIRIRA

apply, the district court had jurisdiction over the § 2241 habeas petitions filed by Ho and Nguyen.

This court has never addressed the question of whether the permanent provisions of IIRIRA divest the federal courts of jurisdiction over § 2241 habeas petitions. Two permanent provisions may impact the cases at bar. INA § 242(g), as amended by IIRIRA § 306(a)(2) and codified at 8 U.S.C. § 1252(g), bars judicial review of the Attorney General's discretionary decisions to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). Section 1252(g) applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings . . . ." IIRIRA § 306(c)(1), Pub. L. No. 104-208, 110 Stat. 3009, 3009-612. Therefore, notwithstanding the general, effective-date provision of IIRIRA, § 1252(g) applies to both Ho and Nguyen. The Supreme Court, however, has recently interpreted § 1252(g) to preclude judicial review of only the three discrete, discretionary acts specifically delineated in the statute. *See Reno v. Arab-American Anti-Discrimination Comm.,* 119 S. Ct. 936, 943-45 (1999). Neither Ho nor Nguyen has asked this court to review the Attorney General's decision to commence proceedings against him, her decision to adjudicate his case, or her decision to execute the removal order. Thus, § 1252(g) does not preclude judicial review of either Petitioner's habeas petition. *See Jurado-Gutierrez*, 190 F.3d at

1144-45 (holding that § 1252(g) does not bar judicial review of § 2241 habeas petitions that challenge final removal orders); *Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir. 1999) (holding that the decision to continue to detain a removable alien does not implicate § 1252(g)).

If applicable, 8 U.S.C. § 1252(a)(2)(B)(ii), a permanent provision added to the INA by IIRIRA § 306(a)(2), also significantly limits judicial review of immigration matters. Section 1252(a)(2)(B)(ii) provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review . . . (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

Even if this permanent provision applies to Ho and/or Nguyen, a question this court does not decide, § 1252(a)(2)(B)(ii) does not bar judicial review of the issues before this court. Neither Ho nor Nguyen challenges one of the discretionary decisions made by the Attorney General for which judicial review is barred by § 1252(a)(2)(B)(ii). *Cf. Van Dinh v. Reno*, 197 F.3d 427, 434 (10th Cir. 1999) (concluding that 8 U.S.C. § 1252(a)(2)(B)(ii) bars judicial review of the Attorney General's discretionary decision to transfer an alien from one correctional facility to another). Both Petitioners, instead, challenge the statutory and constitutional authority for their continued detention. Section 1252(a)(2)(B)(ii) bars judicial review of discretionary decisions. It does not bar

-11-

judicial review of § 2241 habeas petitions, like those before this court, which challenge the validity and constitutionality of the statutes authorizing the continued detention of removable aliens. *Cf. Parra,* 172 F.2d at 957 (concluding that 8 U.S.C. §1226(e) bars judicial review of "challenges to operational decisions, rather than to the legislation establishing the framework for those decisions.").[4] Petitioners' claims clearly fall outside the jurisdictional bars of § 1252(a)(2)(B)(ii) and § 1252(g) but squarely within 8 U.S.C. § 2241. Therefore, this court has jurisdiction.

## B.    Standard of Review

In their habeas petitions, both Ho and Nguyen argued the Attorney General does not have statutory authority to detain them indefinitely pending execution of the final order of removal. The district court did not directly address Petitioners' statutory argument, holding instead that their prolonged detention constituted

---

[4]In *Parra v. Perryman*, the Seventh Circuit Court of Appeals confronted the INS's argument that 8 U.S.C. § 1226(e), a statute similar to 8 U.S.C. § 1252(a)(2)(B)(ii), bars judicial review of § 2241 habeas petitions. *See* 172 F.3d 954, 957 (7th Cir. 1999). Section 1226(e) states, "No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." The Seventh Circuit concluded that § 1226(e) did not divest the federal courts of jurisdiction over habeas petitions which included constitutional claims challenging the alien's continued detention. *See Parra*, 172 F.3d at 957. Arguably, however, § 1226(e) applies only to discretionary decisions made by the Attorney General *pending* the entry of a final removal order. *See* 8 U.S.C. § 1226(a) (1999) ([A]n alien may be arrested and detained *pending a decision on whether the alien is to be removed from the United States*." (emphasis added)).

unconstitutional incarceration. Neither district court Order identifies the statute governing the continued detention of Petitioners and, consequently, neither Order addresses the statutory argument raised in the two habeas petitions. Because the constitutional questions raised by Petitioners and directly addressed by the district court could only be reached if the district court first found that there is statutory authority for the continued detention of both Ho and Nguyen, this court will construe each district court ruling as including a determination that the governing statutes authorize the Attorney General to indefinitely detain Petitioners.

The interpretation of a federal statute is a question of law which this court reviews *de novo*. *See Utah v. Babbitt*, 53 F.3d 1145, 1148 (10th Cir. 1995). This court also conducts a *de novo* review of a district court's resolution of claims alleging constitutional violations by an agency. *See Burke v. Board of Governors of the Federal Reserve System*, 940 F.2d 1360, 1367 (10th Cir. 1991).

**C.** **Statutory Authority to Detain Indefinitely**

**1.** **No. 98-1333**

As a prefatory matter, there is disagreement between the parties as to which statute governs the continued detention of Ho. The INS argues that the Attorney General's authority to continue to detain Ho arises under former 8 U.S.C. § 1226(e) (1994). Ho argues that the plain language of former § 1226 limits its application to the detention of aliens who are awaiting a final determination of

excludability. Ho has received such a determination. Ho claims the only statute that authorizes the continued detention of an excludable alien after entry of a final order of exclusion is former 8 U.S.C. § 1227 (1994),[5] a statute nearly identical to the one interpreted by this court in *Rodriguez-Fernandez* and held to authorize detention only for a reasonable time in which to effectuate the deportation. *See* 654 F.2d at 1389.

In *Rodriguez-Fernandez*, this court addressed the question of whether the statutes in effect in 1981 authorized the Attorney General to indefinitely detain an excludable alien who could not be expeditiously deported. *See* 654 F.2d at 1384-85. Immigration officials allowed the alien, Rodriguez-Fernandez, to depart from the boat on which he had arrived in the United States and placed him into custody pending a determination of his eligibility to enter this country. *See id*. at 1384. After determining that Rodriguez-Fernandez was not clearly entitled to land, immigration officials continued to detain him pending an exclusion hearing. *See id*. Rodriguez-Fernandez was eventually ordered deported, but Cuba, his

---

[5]During oral argument, Ho's counsel suggested that Ho's continued detention, like Nguyen's, is governed by the current version of 8 U.S.C. § 1231(a)(6). Assuming, without deciding, that 8 U.S.C. § 1231(a)(6) applies to Ho's continued detention, that statute, for the reasons discussed *infra*, expressly authorizes the Attorney General to indefinitely detain removable aliens, like Ho, who have been convicted of aggravated felonies.

country of origin, refused to accept him. *See id.* Rodriguez-Fernandez, therefore, remained in INS detention. *See id.*

The *Rodriguez-Fernandez* majority reviewed the statutes which ostensibly authorized the Attorney General to detain an excludable alien both (1) prior to the determination of excludability and (2) after a final order of exclusion had been entered. *See id.* at 1389. The majority summarized the statutes governing detention *pending* a final order of exclusion as follows:

> Provisions relating to excludable aliens seeking entry . . . provide for "temporary removal" from the transportation vehicle or vessel to a place of "detention, pending a decision on the aliens' eligibility to enter the United States and until they are either allowed to land or returned to the care of the transportation line or to the vessel or aircraft which brought them."

*Id.* (quoting 8 U.S.C. § 1223(b)).

The majority's analysis of the statutes governing the Attorney General's duties and authority *following* entry of a final order of exclusion included an analysis of former 8 U.S.C. § 1227. *See id.* at 1389-90. Former § 1227 instructed the Attorney General to immediately effectuate the excludable alien's deportation, "unless the Attorney General, in an individual case, in his discretion, concludes that immediate deportation is not practicable or proper." 8 U.S.C. § 1227(a)(1) (1961).

In an effort to avoid what it believed were problematic constitutional questions, the *Rodriguez-Fernandez* majority refused to construe former § 1227 to

-15-

permit the Attorney General to indefinitely detain an excludable alien whose deportation could not be expeditiously accomplished. *See* 654 F.2d at 1389-90. The majority concluded that the applicable statutes, including former 8 U.S.C. § 1227, authorized the Attorney General to detain excludable aliens only "during proceedings to determine eligibility to enter and, thereafter, during a reasonable period of negotiations for their return to the country of origin or to the transporter that brought them here." *Id*. at 1389.

After *Rodriguez-Fernandez,* but before the sweeping changes wrought by IIRIRA, the INA was amended several times. As a result of one of these amendments, a new section, 8 U.S.C. § 1226(e), was added in 1990. *See* Pub. L. No. 101-649, 104 Stat. 4978, 5050 (1990). It is this statutory provision which the INS argues governs the continued detention of Petitioner Ho. Former 8 U.S.C. § 1226(e) provided:

> (e) Custody of alien
> (1) Pending a determination of excludability, the Attorney General shall take into custody any alien convicted of an aggravated felony upon completion of the alien's sentence for such conviction.
> (2) Notwithstanding any other provision of this section, the Attorney General shall not release such felon from custody unless the Attorney General determines that the alien may not be deported because the condition described in section 1253(g) of this title exists.
> (3) If the determination described in paragraph (2) has been made, the Attorney General may release such alien only after--
> (A) a procedure for review of each request for relief under this subsection has been established,
> (B) such procedure includes consideration of the severity of the felony committed by the alien, and

-16-

(C) the review concludes that the alien will not pose a danger to the safety of other persons or to property.

8 U.S.C. § 1226(e) (1991).

Ho contends that former § 1226(e) governs the continued detention of excludable aliens who have been convicted of aggravated felonies[6] only during the period of time prior to the entry of a final determination of excludability. Because a final order of exclusion has been entered against him, Ho argues that the Attorney General has no authority under former § 1226(e) to continue to detain him. He contends his continued detention is governed solely by former 8 U.S.C. § 1227 (1994), a statute essentially identical to that found by this court in *Rodriguez-Fernandez* to not authorize indefinite detention after entry of a final order of exclusion. This court must, as a threshold matter, resolve the question whether former 8 U.S.C. § 1226(e) governs the continued detention of excludable aliens who have been convicted of aggravated felonies and who have received final orders of exclusion. Because we answer that question in the affirmative, we must then determine whether former § 1226(e) confers on the Attorney General a power this court has concluded she does not have under former 8 U.S.C. § 1227, i.e., the authority to *indefinitely* detain an excludable alien who has been

---

[6]Ho was convicted of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(G) (1994).

convicted of an aggravated felony and who cannot be deported within a reasonable amount of time.

Both the Ninth and Fifth Circuit Courts of Appeal have interpreted former 8 U.S.C. § 1226(e) to authorize the Attorney General to continue to detain an excludable alien *after* a final exclusion order has been entered. *See Gisbert v. United States Attorney General*, 988 F.2d 1437, 1446 (5th Cir. 1993)*; Alvarez-Mendez v. Stock*, 941 F.2d 956, 962 (9th Cir. 1991). In what was then a case of first impression, the Ninth Circuit analyzed both former § 1226(e) and former 8 U.S.C. § 1252(a)(2) (1994), the statute that governed the continued detention of deportable aliens.[7] *See Alvarez-Mendez*, 941 F.2d at 961. The Ninth Circuit concluded that former § 1252(a)(2) required the Attorney General to continue to detain a deportable alien who had been convicted of an aggravated felony both before and after entry of the final determination of deportability. *See id*. That court then specifically rejected the interpretation of § 1226(e) advanced by Ho, concluding that such an interpretation would result in an "irrational distinction"

---

[7]Before the enactment of IIRIRA, aliens ineligible for admission into the United States were designated "excludable" aliens. *See* 8 U.S.C. § 1182 (1994). These individuals are now referred to as "inadmissible" aliens. *See* 8 U.S.C. § 1182. Aliens who had gained admission into the United States were designated "deportable" aliens. *See* 8 U.S.C. § 1251 (1994). Proceedings to remove both inadmissible and deportable aliens are now referred to as "removal proceedings." *See* 8 U.S.C. § 1229a. Under the prior version of the INA, Petitioner Ho was an excludable alien and Petitioner Nguyen was a deportable alien.

-18-

between excludable and deportable aliens; the Attorney General would be required to detain deportable aliens convicted of aggravated felonies both before and after a final determination of deportability but would be required to release excludable aliens who had been convicted of an aggravated felony after entry of the final order of exclusion. *See id.*

> In the case of a dangerous alien subject to exclusion proceedings, however, [petitioner] interprets sections 1226 and 1227 to require the Attorney General to detain the alien while exclusion proceedings are pending, but to release him once a final order of exclusion is entered, unless the Attorney General can effect the alien's removal immediately. Not only would this distinction undermine Congress' attempt to protect society from dangerous aliens, it would be contrary to accepted tenets of U.S. immigration law, which treat aliens subject to deportation more favorably than those seeking initial admission.
> The only logical interpretation of section 1226(e) is that it both requires the Attorney General to detain aliens convicted of aggravated felonies pending a determination of their excludability, and provides that where deportation of an alien found excludable cannot be immediate, the Attorney General may release [the alien] only if doing so will not endanger society.

*Id*. at 961-62 (footnote omitted).

We find the reasoning in *Alvarez-Mendez* persuasive and now join the Ninth and Fifth Circuits in interpreting former 8 U.S.C. § 1226(e) to authorize the Attorney General to continue to detain an excludable alien who has been convicted of an aggravated felony after the entry of a final order of exclusion.

Former § 1226(e) is not ambiguous concerning the Attorney General's discretion to indefinitely detain an excludable alien whose deportation cannot be

expeditiously accomplished. The statute is framed not as a grant of authority to detain the alien, but as a limitation on the Attorney General's power to release the alien from detention. If the alien cannot be deported because his country of origin refuses to accept him, the statute expressly prohibits the Attorney General from releasing the alien unless, upon review of the alien's request for relief, it is determined that the alien "will not pose a danger to the safety of other persons or to property." 8 U.S.C. § 1226(e) (1994). The statute imposes no time limit on its restriction of the Attorney General's power to release the alien and this court will not read a time limit into the statute. *Cf. Pueblo of San Ildefonso v. Ridlon*, 103 F.3d 936, 939 (10th Cir. 1996) ("Where statutory language is clear and unambiguous, that language is controlling and courts should not add to that language.").

The statutory scheme analyzed by this court in *Rodriguez-Fernandez* did not include former 8 U.S.C. § 1226(e), the statute applicable to the case at bar. The most reasonable interpretation of former § 1226(e) compels the conclusion that the Attorney General must continue to detain, after entry of a final order of exclusion, an excludable alien who has been convicted of an aggravated felony unless a review of the alien's request for relief concludes that the alien does not pose a danger to the safety of other persons or to property. Ho is an excludable alien who has been convicted of an aggravated felony. Acting on Ho's request for

-20-

relief from continued incarceration, the Attorney General has concluded that Ho poses a danger to the safety of other persons or to property, a determination not challenged by Ho and thus not addressed herein. Pursuant to former § 1226(e), therefore, the Attorney General may not release Ho from detention and is statutorily obligated to continue to detain him indefinitely.

### 2. No. 99-1182

The INS maintains that the question of Nguyen's continued detention is governed by 8 U.S.C. § 1231(a)(6) and Nguyen does not dispute this position. This court will, therefore, analyze Nguyen's statutory claims under § 1231(a)(6).[8]

---

[8] 8 U.S.C. § 1231(a)(6) was added to the INA by IIRIRA § 305(a)(3). Arguably, 8 U.S.C. § 1252 (1994), the statute in effect at the time deportation proceedings were commenced against Nguyen may govern Nguyen's continued detention. *But see Zadvydas v. Underdown*, 185 F.3d 279, 287 & 286 n.7 (5th Cir.1999) (determining that the effective-date provision of IIRIRA is ambiguous and concluding that IIRIRA applies to aliens who had received final removal orders before IIRIRA's effective date). Former § 1252(a)(2)(B) was added to the Code in 1991 and provided:

> The Attorney General may not release from custody any lawfully admitted alien who has been convicted of an aggravated felony, either before or after a determination of deportability, unless the alien demonstrates to the satisfaction of the Attorney General that such alien is not a threat to the community and that the alien is likely to appear before any scheduled hearings.

8 U.S.C. § 1252(a)(2)(B) (1994).

By its express terms, this statute applies to aliens like petitioner, Nguyen, who were formerly classified as "deportable." *See id*.; *see also Gisbert v. United States Attorney General*, 988 F.2d 1437, 1445 (5th Cir. 1993) (concluding that

Pursuant to 8 U.S.C. § 1231(a)(1)(A), once an alien is ordered removed, the Attorney General "shall remove the alien from the United States within a period of 90 days." This ninety-day period is referred to in the statute as the "removal period." *See* 8 U.S.C. § 1231(a)(1). Although the statute contains the ostensibly unequivocal language "shall remove," it begins with the qualifying language, "[e]xcept as otherwise provided in this section." *Id.* The statute, thus, expressly contemplates that the Attorney General may be unable to remove certain aliens within the removal period. At least one qualifying provision referenced in § 1231(a)(1)(A) is found at 8 U.S.C. § 1231(a)(6). Specifically, § 1231(a)(6) provides:

> An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney general to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

---

former 8 U.S.C. § 1252(a)(2)(B) allows the Attorney General to indefinitely detain deportable aliens). Additionally, Nguyen was convicted of an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(G) (1996). Arguably, former § 1252(a)(2)(B) requires the Attorney General to indefinitely detain a deportable alien convicted of an aggravated felony who cannot demonstrate he is not a threat to society or likely to abscond. Because neither party has raised the issue, however, we do not decide whether this statute governs Nguyen's continued detention or whether the permanent provisions of IIRIRA apply to aliens who received final removal orders before IIRIRA's effective date.

The INS asserts that § 1231(a)(6) is unambiguous and confers on the Attorney General the statutory authority to indefinitely detain an alien who cannot be removed during the removal period if that alien has been found to be a risk to the community or unlikely to comply with the removal order. Nguyen, however, argues that § 1231(a)(6) is ambiguous and no more authorizes indefinite detention than the statute interpreted by this court in *Rodriguez-Fernandez.*

Nguyen's contention that 8 U.S.C. § 1231(a)(6) is indistinguishable from the statute interpreted by this court in *Rodriguez-Fernandez* is without merit. Unlike the ambiguous statute analyzed in *Rodriguez-Fernandez*, § 1231(a)(6) is not ambiguous. It expressly allows the Attorney General, in her discretion, to continue to detain the following removable aliens beyond the ninety-day removal period: (1) those who are inadmissible under 8 U.S.C. § 1182; (2) those who are removable under 8 U.S.C. § 1227(a)(1)(C), § 1227(a)(2), or § 1227(a)(4); and (3) those who she determines would be a flight risk or a risk to the community if released. *See* 18 U.S.C. § 1231(a)(6); *accord Chi Thon Ngo v. Immigration & Naturalization Serv.*, 192 F.3d 390, 394-95 (3rd Cir. 1999).

Nguyen was convicted of an aggravated felony and, therefore, is removable under 8 U.S.C. § 1227(a)(2). *See* 8 U.S.C. §1101(a)(43)(G). Additionally, the Attorney General has determined that Nguyen is a risk to the community and unlikely to comply with the order of removal if released from incarceration.

-23-

Nguyen does not challenge the Attorney General's determination that he would be a flight risk or a risk to the community if he were released from incarceration and this court thus does not address the issue. Consequently, the statute clearly and unambiguously authorizes the Attorney General to detain Nguyen beyond the ninety-day removal period.

Section 1231(a) places no time limit on the continued detention of the aliens whose continued detention it authorizes. Although Nguyen argues this panel must follow the *Rodriguez-Fernandez* majority and read a reasonable time limit into the statute, that argument is also without merit. In *Rodriguez-Fernandez*, the majority interpreted an *ambiguous* statute to authorize the continued detention of an excludable alien only "during a reasonable period of negotiations for [his] return to [his] country of origin . . . ." 654 F.2d at 1389. Because the statute analyzed in *Rodriguez-Fernandez* was ambiguous, the majority's imposition of a reasonable time limit on continued detention was an essential component of its interpretation of the statute. In stark contrast, 8 U.S.C. § 1231(a)(6) *expressly* allows for continued detention beyond the removal period with no time limit placed on the duration of such detention. This court will not substitute its judgment for that of Congress by reading into the statute a time limit that is not included in the plain language of the statute. *Cf. Pueblo of San Ildefonso*, 103 F.3d at 939 ("Where statutory language is clear and unambiguous,

-24-

that language is controlling and courts should not add to that language."). The unambiguous language of 8 U.S.C. § 1231(a)(6) and the absence of an express time limit on the Attorney General's authority to continue to detain leads this court to conclude that Congress intended to and expressly did authorize the Attorney General to indefinitely detain certain removable aliens, Nguyen among them, who cannot be removed within the ninety-day removal period. *Accord Chi Thon Ngo*, 192 F.3d at 394-95.

## C. Constitutionality of Indefinite Detention

Because the applicable statutes allow the Attorney General to indefinitely detain both Ho and Nguyen, it is necessary for this court to address the question of whether such indefinite detention is unconstitutional. Petitioners argue this court is bound by the constitutional analysis in *Rodriguez-Fernandez.* This argument is unpersuasive. This court's conclusion in *Rodriguez-Fernandez* that the statute in effect at the time did not authorize indefinite detention was influenced by the majority's belief that any other reading of the statute would raise significant constitutional problems. *See Rodriguez-Fernandez*, 654 F.2d at 1386. "We dispose of the appeal by construing the applicable statutes to require [petitioner's] release at this time. Nevertheless, it seems important to discuss the serious constitutional questions involved if the statute were construed differently." *Id.*; *see also Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg.*

*& Constr. Trades Council*, 485 U.S. 568, 575 (1988) (reiterating that "it is beyond debate" that courts must construe statutes to avoid constitutional problems unless such construction is plainly contrary to Congress' intent). The *Rodriguez-Fernandez* majority, however, did not purport to definitively answer the constitutional questions raised; its statutory interpretation was aided, not compelled, by its constitutional analysis. The majority held that the statute did not authorize indefinite detention. *See* 654 F.2d at 1389-90. It did not hold that indefinite detention is unconstitutional. Thus, any discussion of the constitutionality of indefinite detention in *Rodriguez-Fernandez* is *dicta* and is not binding on this panel. *See Bates v. Dep't of Corrections*, 81 F.3d 1008, 1011 (10th Cir. 1992) ("[A] panel of this Court is bound by a holding of a prior panel of this Court but is not bound by a prior panel's dicta.").

The Due Process Clause of the Fifth Amendment provides, in pertinent, part that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. Amend. V. The due process protection of the Fifth Amendment has two components, a substantive due process component and a procedural due process component. *See United States v. Salerno*, 481 U.S. 739, 746 (1987). The substantive due process component precludes the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *Id.* (citations and quotations

omitted). The procedural due process component precludes the government from depriving a person of life, liberty, or property in an unfair manner. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Substantive and procedural due process claims must be supported by an underlying liberty interest. *See Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998). A liberty interest can arise in one of two ways: (1) from the Due Process Clause itself; or (2) from a state or federal statute. *See id.* Any due process analysis must begin with a "careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993).

Petitioners do not challenge the Attorney General's power to deport them or her power to detain them for a reasonable time until they can be physically removed from this country. Petitioners, instead, claim that because their country of origin refuses to accept them, their continued detention is indefinite, and possibly permanent and thus constitutes punishment without a criminal trial. Petitioners assert that they have a liberty interest, arising from the Due Process Clause itself, in being free from this type of incarceration. Petitioners, however, fundamentally mischaracterize the true nature of the right they are asserting.

Petitioners are subject to final removal orders and the only step in the removal process remaining to be accomplished is the execution of the removal orders effectuating Petitioners' physical expulsion from this country. Any right either Petitioner had to remain in this country was extinguished when their

removal orders became final. *See* 8 U.S.C. § 1101(a)(20); 8 C.F.R. § 1.1(p) (1999) ("The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed. Such status terminates upon entry of a final administrative order of exclusion or deportation.")

If their habeas petitions are granted, Petitioners will be awarded the very right denied them as a result of the final orders of removal, i.e., the right to be at large in the United States. Although the petitions could be characterized as requests to be released from incarceration, the relief they seek is indistinguishable from a request to be readmitted to this country, albeit temporarily, until their return to Vietnam can be effectuated. The purported liberty interests at stake in these cases, therefore, are most appropriately viewed from the perspective of an alien who has sought but been denied initial entry into this country and who is subject to indeterminate detention because his country of origin will not accept his return.

It is well-settled that aliens who are physically present in this country but who are not lawful permanent residents are entitled to some of the protections afforded by the Fifth Amendment. *See Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("Aliens, even aliens whose presence in this country is unlawful, have long been

recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments."). The Supreme Court, however, "has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *see also United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned."). Although Petitioners have been continually present in this country since they were admitted as refugees, physical presence alone does not confer heightened constitutional rights on an alien seeking admission to this country. *See Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 213 (1953). Consequently, while aliens physically present in the United States are clearly "persons" afforded some Fifth Amendment rights, they have no constitutional rights *regarding their application for admission*.

Petitioners have been ordered deported and those orders are final. The final removal orders stripped both Ho and Nguyen of any heightened constitutional status either may have possessed prior to the entry of the final removal order. Like an alien seeking initial entry, Petitioners have no right to be at large in the United States. As a consequence of their final removal orders, and notwithstanding their physical presence in this country, Ho and Nguyen have no

greater constitutional rights with respect to their applications for admission than an alien seeking to enter this country for the first time. *Cf. id*. ("For purposes of the immigration laws, moreover, the legal incidents of an alien's entry remain unaltered whether he has been here once before or not. He is an entering alien just the same, and may be excluded if unqualified for admission under existing immigration laws.").

Nguyen, however, argues that he possesses greater constitutional rights than excludable aliens because of his former status as a lawful permanent resident. Nguyen's argument was recently considered and rejected by the Fifth Circuit Court of Appeals. *See Zadvydas*, 185 F.3d at 294-97. Acknowledging that a resident alien is entitled to greater procedural due process rights during removal proceedings than those accorded excludable aliens, that court nevertheless concluded that once a removal order has become final and the only act remaining to be carried out is the actual expulsion of the alien, no distinction exists between the constitutional rights of former resident aliens and those of excludable aliens. *See id*. The Fifth Circuit analyzed several Supreme Court cases and concluded, "Nothing in these cases suggests that a resident alien has a broadly privileged constitutional status relative to excludable aliens, or is constitutionally entitled to more favorable treatment when both the right asserted and the governmental interest are identical to those in the parallel case of an

excludable alien." *Id.* The Fifth Circuit could find no distinction between the right to release from continued incarceration asserted by a deportable alien subject to continued detention pending deportation and the same right asserted by an excludable alien subject to the same continued detention. *See id.* at 295-96. Further, that court found no distinction between the government's interest in expelling a deportable alien and its interest in expelling an excludable alien. *See id.* at 296.

We have found no case, and none was brought to our attention by Nguyen, in which either the Supreme Court or a court of appeals has held that a deportable alien subject to a final order of deportation and being detained by the United States pending that deportation possesses greater constitutional rights than an excludable alien in the same position. The Fifth Circuit's analysis was comprehensive and we find it persuasive. We conclude that once a removal order has become final and an alien who was formerly a lawful permanent resident seeks temporary re-entry into the United States, the alien possesses identical constitutional rights with respect to his application for admission as an excludable alien.

Both Petitioners are properly characterized as inadmissible aliens seeking temporary entry into the United States. Notwithstanding their physical presence in this country, they have no constitutional rights regarding their application for

entry. *See Plasencia*, 459 U.S. at 32. Hence, the Due Process Clause does not provide Petitioners a liberty interest in the right they assert, i.e., the right to be temporarily admitted into this country. Furthermore, Petitioners do not contend the statutes that authorize their continued detention or any other existing state or federal law or regulation creates a liberty interest in being temporarily admitted into the United States.[9]

Petitioners have not demonstrated that they have a liberty interest in the temporary entry they seek arising either under the Due Process Clause or from a state or federal statute or regulation. Accordingly, Petitioners' substantive and procedural due process claims fail. *See Fristoe*, 144 F.3d at 630.

## III. CONCLUSION

The applicable statutes authorize the continued, indefinite detention of both Petitioners. Because Petitioners have no liberty interest in the right they are asserting, their due process claims fail. Consequently, there is no constitutional

---

[9]Even if Petitioners had argued that either former 8 U.S.C. § 1226(e) (1994), 8 U.S.C. § 1231(a)(6) or some other law or regulation created such a liberty interest because it allows the Attorney General to release them from detention if she determines that they are no longer a flight risk or a risk to society, it is unclear whether such a law or regulation would create a liberty interest. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (holding that no liberty interest is created by a statute that allows the decision-maker to deny the requested relief with unfettered discretion); *Velasco-Gutierrez v. Crossland*, 732 F.2d 792, 797 (10th Cir. 1984) (holding that no liberty interest was created by INS internal operations instructions); 8 U.S.C. § 1252(a)(2)(B)(ii) (barring judicial review of the Attorney General's discretionary decisions).

impediment to Petitioners' continued detention. The judgment of the district court in No. 98-1333 is **reversed** and the case is **remanded** to the district court with instructions to revoke Petitioner Ho's bond and for any further proceedings consistent with this opinion. The judgment of the district court in No. 99-1182 is **reversed** and the case **remanded** to the district court with instructions to revoke Petitioner Nguyen's bond and for any further proceedings consistent with this opinion. The mandate shall issue forthwith.

NOS. 98-1333 and 99-1256 – HO V. GREEN, AND NO. 99-1182 – NGUYEN V. GREEN

BRORBY, Circuit Judge, dissenting.

I agree with the majority's well-reasoned resolution of the threshold jurisdictional issue. I further agree the plain language of the applicable statutes, former 8 U.S.C. § 1226(e) (1994) and current 8 U.S.C. § 1231(a)(6), authorizes the Attorney General to detain Petitioners indefinitely pending execution of the final removal order. I must depart from the majority's analysis at that point, however, because the indefinite detention of Petitioners Ho and Nguyen may well violate the substantive due process rights I believe the Fifth Amendment of the United States Constitution affords them, in a manner that shocks the conscience. For that reason, I would remand this matter to the district court for additional factual findings in accordance with the analysis presented below.

The majority avoid the crucial constitutional issue this case presents by preemptively concluding that Petitioners "fundamentally mischaracterize the true nature of the right they are asserting." According to the majority, "[b]oth Petitioners are properly characterized as inadmissible aliens seeking temporary entry into the United States." As shown below, it is the majority, not the Petitioners, who mischaracterize the fundamental rights at stake in this case.

Petitioners plainly assert that their continued, indefinite detention pending removal amounts to impermissible punishment and therefore violates the liberty rights they have as "persons" protected under the Due Process Clause of the Fifth Amendment to the United States Constitution. The majority disregard this claim, reasoning, without the support of authority, that "[t]he final removal orders stripped both Ho and Nguyen of any heightened constitutional status either may have possessed prior to the entry of the final removal order." On that basis, the majority conclude "[t]he purported liberty interests at stake in these cases ... are most appropriately viewed from the perspective of an alien who has sought but been denied initial entry into this country and who is subject to indeterminate detention because his country of origin will not accept his return." Narrowing its analysis to the perspective of an alien seeking initial admission to the United States, the majority permits our government to detain Petitioners indefinitely, even permanently, with no constitutional recourse ("'an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application'" (quoting *Landon v. Plasencia*, 459 U.S. 21, 32 (1982)).

Close analysis reveals that the majority's treatment of Petitioners' constitutional claims is supported only by a tenuous foundation of legal fiction

stacked upon legal fiction. In order to characterize Petitioners as aliens seeking admission, the majority must first equate the removal order itself with an actual physical exit from the country. Having made that leap, the majority adopt the "entry fiction" applied in admission cases so as to characterize immigrants who are physically present within United States borders pending a determination of admission as never having effected entry into this country and therefore not entitled to due process protection. *See Plasencia*, 459 U.S. at 32-33. Compounding these fictions is the majority's unsupported conclusion that while Petitioners resided in the United States they may have enjoyed some form of "heightened" constitutional status that could be stripped away upon the issuance of a removal order. Finally, to avoid the constitutional prohibition against imprisonment for purposes other than punishment, the majority employs the fiction that detention is merely an extension of the exclusion proceedings, and therefore within the plenary power of the executive and legislative branches to govern immigration matters.

In my view, this fictional foundation the majority construct as a barrier to Petitioners' constitutional claims collapses under the ground floor constitutional principal that "[w]hatever his status under the immigration laws, an alien is surely a 'person' in any ordinary sense of that term. Aliens, even aliens whose

presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982); *see also*, *Plasencia*, 459 U.S. at 32 ("[o]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly"); *Rodriguez-Fernandez*, 654 F.2d at 1387-88 ("'There is no power in this court or in any other tribunal in this country to hold indefinitely any sane citizen or alien in imprisonment, except as a punishment for crime.'" (quoting *Petition of Brooks*, 5 F.2d 238, 239 (D. Mass. 1925)). Petitioners entered the United States as refugees in the 1980s and have lived in this country for over fifteen years. They have not exited the country and do not seek entry or readmission, temporary or otherwise. Thus, regardless of their status under the removal orders, in the most real sense Petitioners continue to be "persons" who enjoy basic constitutional rights.

Liberty is one of those basic rights enjoyed by all "persons," as "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Any infringement of this right, in the absence of incarceration pending trial or other disposition of a criminal charge (*i.e.*, punishment), is subject to strict scrutiny –

-4-

the infringement must be "narrowly tailored to serve a compelling state interest." [1]

*See Reno v. Flores*, 507 U.S. 292, 301-02 (1993); *United States v. Salerno*, 481 U.S. 739, 747 (1987). The appropriate strict scrutiny analysis is set forth in *Salerno*, which instructs that we must first determine whether the detention is intended as punishment or for a legitimate regulatory purpose. If the detention is intended as legitimate regulation, we must determine whether it is "excessive in relation to the regulatory purpose Congress sought to achieve." 481 U.S. at 747-48.

---

[1] I agree with the District Court for the Western District of Washington in its rejection of the government's argument that because the legislative and executive branches possess "plenary power" over immigration and naturalization, *see Flores,* 507 U.S. at 305-06, courts should apply a more deferential standard of review. As that court noted:

> While the plenary power doctrine supports judicial deference to the legislative and executive branches on substantive immigration matters, such deference does not extend to post-deportation order detention. Indefinite detention of aliens ordered deported is not a matter of immigration policy; it is only a means by which the government implements Congress's directives. The dangers at which the detention scheme is directed, chiefly the prevention of flight and the protection of the community pending deportation of aliens who have been convicted of crimes, involve domestic interests rather than international concerns.

*Phan v. Reno*, 56 F. Supp.2d 1149, 1155 (W.D. Wash. 1999).

The answer to the first question is clear. No one asserts Petitioners are being detained as punishment. Each has served his sentence(s) for the crime(s) committed. Furthermore, deportation and immigration detention are not considered punishment. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984); *Zadvydas*, 185 F.3d at 296; *Phan*, 56 F. Supp.2d at 1155 n.7. We are therefore left to determine what regulatory purpose is being served and whether the detention is excessive in relation to that purpose.

As a number of district courts dealing with this difficult issue in the first instance have recognized, the critical inquiry in these cases is whether an alien's detention is excessive in relation to the government's legitimate regulatory interest in (1) ensuring the safe removal of aliens ordered deported; (2) preventing flight prior to deportation; and (3) protecting the public from dangerous felons. *See Vo v. Green*, 63 F. Supp.2d 1278, 1282-83 (D. Colo. 1999); *Phan*, 56 F. Supp.2d at 1155-56; *Hermanowski v. Farquharson*, 39 F. Supp.2d 148, 159 (D. R.I. 1999); *see also* 8 U.S.C. §1231(a)(6). In evaluating the scope of the detention in relation to the government's regulatory interest,

> we must necessarily balance the likelihood that the government will be able to effectuate deportation, against the dangerousness of a petitioner and the likelihood that he will abscond if released. In so doing, it becomes clear that as the probability that the government can actually deport an alien decreases, the government's interest in detaining that alien becomes less compelling and the invasion into

-6-

the alien's liberty more severe.  Dangerousness and flight risk are thus permissible considerations and may, in certain situations, warrant continued detention, but only if there is a realistic chance that an alien will be deported. Detention by the INS can be lawful only in aid of deportation.  Thus, it is "excessive" to detain an alien indefinitely if deportation will never occur.

*Phan*, 56 F. Supp.2d at 1156.   [2]

Because I do not accept the premise that Petitioners have no liberty rights at stake, I would apply this balancing framework to evaluate each Petitioner's substantive due process claim.   [3]   The likelihood of deportation, dangerousness and

---

[2]  This circuit and others have used similar balancing frameworks when reviewing other types of administrative detention.  *See, e.g., United States v. Theron*, 782 F.2d 1510 (10th Cir. 1986); *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989); *United States v. Gelfuso*, 838 F.2d 358 (9th Cir. 1988).

[3]  I agree with that portion of the majority's and Fifth Circuit's analysis that concludes there is no difference, under the circumstances presented here, between the right to release from continued incarceration asserted by an excludable versus a deportable alien, *see* Maj. Slip Op. at 29-30; *Zadvydas*, 185 F.3d at 294-96.  Mr. Ho and Mr. Nguyen assert the same fundamental constitutional right, and the government's interest in removing each is the same.  *See Zadvydas*, 185 F.3d at 295.  Courts which have found the distinction between deportable and excludable aliens relevant in this context, *see Vo*, 63 F. Supp.2d at 1282-83; *Phan*, 56 F. Supp. at 1153-54; *Hermanowski*, 39 F. Supp.2d at 157-58, appear to have done so as a means to avoid application of the entry fiction doctrine to deny constitutional rights to deportable aliens (*i.e.*, aliens who once were lawful permanent residents).  The strict scrutiny analysis I propose would eliminate the need for such a distinction in order to protect the constitutional rights of aliens who the United States government is unable to deport.

the likelihood of flight clearly are factual inquiries unique to each case. The district court did not undertake such an inquiry, but instead relied on this court's decision in *Rodriguez-Fernandez* to grant the writs. As the majority point out, *Rodriguez-Fernandez* does not strictly control this case. Consequently, I would remand these matters to the district court to apply the balancing framework in the first instance, considering all facts relevant to evaluating the scope of detention in relation to the government's legitimate regulatory purpose.

In sum, I emphasize that the sovereign power of the political branches of government to detain and remove aliens simply is not without limit -- it must not run afoul of the Fifth Amendment's guarantee that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The substantive component of this due process guarantee protects against governmental interference with those rights "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 324-25 (1937), and prohibits governmental conduct that "shocks the conscience." *Rochin v. California*, 342 U.S. 165, 172 (1952). The majority cannot dispute that Petitioners Ho and Nguyen were "persons" under the Constitution for over fifteen years. Ordered liberty does not allow for the use of legal fictions to strip any human being of his status as a "person" under the United States Constitution in

order to justify indefinite imprisonment pending completion of the regulatory process of removal. Governmental conduct that so reduces an individual to a "non-person" to permit such imprisonment without any attempt to scrutinize the scope of the detention by balancing the likelihood that the government will be able to effectuate deportation against a petitioner's dangerousness and the likelihood that he will abscond if released most assuredly shocks my conscience. I therefore dissent.