**Loc DUONG, Plaintiff,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE., Defendant.**

**No. 99CV1965–J (RBB).**

United States District Court, S.D. California.

March 17, 2000.

---

Loc Duong, El Centro, CA, Pro se.

U.S. Attorney, U.S. Attorneys Office, Civil Division, San Diego, CA, for Immigration and Naturalization Service, respondent.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

JONES, District Judge.

On September 14, 1999, Petitioner Loc Duong, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Respondents oppose. The Court finds that: 1) the Immigration Reform and Immigrant Responsibility Act (IIRIRA) does not divest the Court of jurisdiction over habeas corpus petitions; 2) Petitioner does not need to exhaust his administrative remedies in order for the Court to review the petition; 3) Petitioner's substantive due process rights are violated by his indefinite incarceration; 4) procedures used to determine whether Petitioner should be released pending deportation violate procedural due process Accordingly, the court GRANTS Petitioner's application for writ of habeas corpus.

## BACKGROUND

Petitioner, Loc Duong, is a native and citizen of Vietnam under final order of removal. The Immigration and Naturalization Service (INS) is detaining him without bond pending his removal to Vietnam.

Petitioner was born in Vietnam on October 3, 1973 and was legally admitted to the United States as a refugee on August 27, 1982. (Pet.'s Traverse 3). On May 17, 1993, Petitioner pled guilty in California state court to conspiracy to commit rob-

bery and vehicle theft. The court sentenced him to three years in prison, and Petitioner served twenty-two months of his sentence before he was released. Petitioner ·has violated parole twice since his release. (Pet's Traverse 4). On December 16, 1998, the immigration judge ordered Petitioner removed from the United States to Vietnam, and Petitioner waived his appeal of the decision, making the removal order final. (Resp't's Return 2). INS has detained Petitioner without bond since this order. (Pet's Traverse 5).

The INS District Director conducted a custody review on February 16, 1999 and determined the Petitioner should continue to be detained in the custody of the INS. (Resp't's Return 2). In a second custody review,· the District Director again found that Petitioner should remain in custody, despite the supervisory officer's recommendation that Petitioner be released. (Pet's Traverse 5).

On August 16, 1999, Petitioner filed an appeal of the District Director's decision. The INS has not responded to this appeal (Pet's Traverse 5–6). Since Petitioner's detention, the INS has been unable to obtain Vietnamese travel documents for Petitioner. (Resp't's Return 2–3).

On September 14, 1999, Petitioner filed this writ of habeas corpus arguing that he is being indefinitely detained because travel documents cannot be obtained and that this indefinite detention violates his substantive and procedural due process rights. Respondent counters by arguing that the Court does not have subject matter jurisdiction over this matter. Additionally, they argue that Vietnam will repatriate Petitioner soon and he will be deported and that Petitioner, as a deportable alien, does not have a fundamental liberty interest protected by the United States' Constitution.

**DISCUSSION**

**I. Jurisdiction**

The Court has authority to grant writs of habeas corpus under Section 2241 of Title 28 of the United States Code. Habeas relief can be granted where a person "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

**A. Subject Matter Jurisdiction**

Respondents contend that the 1996 amendment to the Immigration and Nationality Act denies the Court subject matter jurisdiction over this petition. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) amended the Immigration and Nationality Act to restrict federal power of judicial review over "any cause or claim by or on behalf of any alien arising from the decision or action of the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act." 8 U.S.C. § 1252(g). However, this does not prevent the Court from exercising jurisdiction over the Petitioner's constitutional claims.

■ Section 1252(g) is not a general bar on jurisdiction over all claims related to deportation. In *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, 119 S.Ct. 936, 142 L.Ed.2d 940 the Supreme Court held that Section 1252(g) should be read narrowly, so as to apply only to "three discrete actions" taken by the Attorney General; specifically, § 1252(g) applies to the Attorney General's decision to "commence proceedings, adjudicate cases, or execute removal orders." *Id.* at 943.

■ Here, Petitioner is not challenging the Attorney General's decision to "commence proceedings, adjudicate cases" or to "execute removal orders." Instead, Petitioner is challenging his indefinite detention on constitutional principles. Since Petitioner's claim "constitute[s] 'general collateral challenges to unconstitutional practices and policies used by the agency,'" jurisdiction is not precluded by 1252(g). *Walters v. Reno*, 145 F.3d at 1032, 1052 (9th Cir.1998), *cert. denied*, 526 U.S. 1003, 119 S.Ct. 1140, 143 L.Ed.2d 208

(1999) (quoting in part *McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 492, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991). Accordingly, § 1252(g) does not deprive this court of jurisdiction over "Petitioner's collateral challenges to the INS's implementation of federal law." *Nguyen v. Fasano,* 84 F.Supp.2d 1099 (S.D.Cal.2000)).

■ Respondents also challenge subject matter jurisdiction under 8 U.S.C. § 1252(b) and 1252(b)(9). Section 1252(b) divests the court of jurisdiction over a "review of an order of removal." "The clear language of Section 1252(b)(1) demonstrates that it applies to final orders of removal, stating that petitions 'must be filed not later than 30 days after the date of the final order of removal.'" *Nguyen,* 84 F.Supp.2d 1099 (S.D.Cal.2000") (quoting 8 U.S.C. § 1252(b)(1)). Here, Petitioner is challenging his detention, not his final order of removal; therefore, § 1252(b) does not prohibit the Court from taking jurisdiction over his claim.

■ Section 1252(b)(9), on the other hand, regulates jurisdiction where no other provisions apply and has been referred to as the "unmistakable zipper clause" *Reno v. American–Arab Anti–Discrimination Committee,* 119 S.Ct. 936, 943 (1999). Respondents contend that section 1252(b)(9) also deprives the court of jurisdiction. Section 1252(b)(9) states that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section. 8 U.S.C. § 1252(b)(9).

In *Reno v. American–Arab Anti–Discrimination Committee,* the Supreme Court held that section 1252(b)(9) is not so broad as to be applied to all deportation claims. In fact, other courts in the Southern District of California have applied *Reno* to facts similar to those here and found that "[e]ven with its broad scope, § 1252(b)(9) applies only to final orders of removal and

is not intended to cover all challenges by an alien to all aspects of the treatment he or she receives during the deportation process." *Nguyen,* 84 F.Supp.2d 1099 (S.D.Cal.2000).

Moreover, the majority of the recent cases dealing with this issue have consistently held that district courts have subject matter jurisdiction over deportable aliens' petitions for writs of habeas corpus. *Zadvydas v. Underdown,* 185 F.3d 279 (5th Cir.1999), *petition for cert. filed* (U.S. Jan. 11, 2000)(No. 99–77–91); *Ho v. Greene,* 204 F.3d 1045, 2000 WL 228755 (10th Cir. 2000); *Phan v. Reno,* 56 F.Supp.2d 1149 (W.D.Wash.1999); *Nguyen,* 84 F.Supp.2d 1099 (S.D.Cal.2000). The Court adopts the reasoning of these cases in finding subject matter jurisdiction.

### B. Exhaustion of Administrative Remedies

■ Respondents additionally contend that the Court should deny jurisdiction because Petitioner has not exhausted his administrative remedies since he failed to appeal his custody review to the Board of Immigration Appeals (BIA). Exhaustion of administrative remedies is only necessary in order for the Court to review the petition if either the statute specifically requires exhaustion or it is called for by the administrative scheme. *See McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). Here, although Petitioner can request a custody review from the INS District Director, *see* C.F.R. § 236.1(d)(2), or appeal to the BIA, *see* 8 C.F.R. §§ 3.3(a), 236.1(d)(3)(iii), there is no specific statutory language requiring exhaustion of administrative remedies.

■ "Where a statute does not explicitly require administrative exhaustion, the decision of whether to require exhaustion is left to judicial discretion." *Nguyen,* 84 F.Supp.2d 1099 (S.D.Cal.2000). If reviewing the petition would interrupt the administrative review process and if Petitioner could seek relief through these means, the Court would decline jurisdiction in this

case. However, Petitioner is requesting that the Court review whether his continued detention is consistent with the Fifth Amendment, and there is no administrative proceeding that would address this issue. In light of these circumstances, the Court will not require that Petitioner exhaust his administrative remedies.

## II. Due Process

The Due Process Clause of the Fifth Amendment ensures that no person be deprived of life, liberty or property without due process of law. U.S. CONST. amend. V. Petitioner contends that both his right to substantive due process and his right to procedural due process have been violated in his continued detention. The Court will examine both his substantive and procedural due process claims.

### A. Substantive Due Process

■ Petitioner first argues that his indefinite incarceration violates his substantive due process rights. Federal Courts have recognized that the government cannot infringe on "certain 'fundamental' liberty interests, regardless of any process provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Therefore, if the Petitioner is found to have a fundamental right, the Court must apply strict scrutiny in reviewing Petitioner's detention.

### 1. Does Petitioner Have a Fundamental Right?

■ The courts are split and the Ninth Circuit has not spoken as to whether aliens who have gained lawful admission to the United States but are now awaiting deportation have a fundamental liberty interest under the Constitution. Respondent argues that the Court should follow the recent decision of *Zadvydas v. Underdown*, 185 F.3d 279 (5th Cir.1999), where the Fifth Circuit held that aliens under a final order of deportation do not have a fundamental liberty interest under the Constitution. The Court declines to follow this holding.[1] In *Zadvydas*, the Fifth Circuit extended the reasoning that excludable aliens do not have a fundamental liberty interest to apply to deportable aliens as well.[2] This extension of the law illogically stretches current precedent.

Denial of an excludable alien's constitutional rights rest on the concept of "entry fiction," which provides that although these aliens are physically present on U.S. territory, "such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Gisbert v. U.S. Att'y Gen.*, 988 F.2d 1437, 1440 (5th Cir.), *amended*, 997 F.2d 1122 (1993) "Because excludable aliens are deemed under the entry doctrine not to be present on United States territory, a holding that they have no substantive right to be free from immigration detention reasonably follows." *Barrera–Echavarria v. Rison*, 44 F.3d 1441, 1450 (9th Cir.1995).

■ Deportable aliens are distinguishable from excludable aliens in that they have lawfully entered the United States without the "entry fiction" that provides the basis for an excludable alien's diminished constitutional rights. While "[t]he Bill of Rights is a futile authority for aliens seeking admission for the first time to these shores[.] ... once an alien lawfully enters and resides in this country he be-

---

1. The recent Tenth Circuit case *Ho v. Greene* also held that deportable aliens have no greater constitutional interests than excludable aliens. 204 F.3d 1045 (10th Cir.2000). ·In this holding, the Tenth Circuit uses essentially the same reasoning as the court in *Zadvydas*. Accordingly, the Court declines to follow *Ho* as well.

2. Prior to the enactment of IIRIRA, aliens who were not eligible for admission into the United States were referred to as "excludable" aliens. See 8 U.S.C. § 1182 (1994). They are now designated as "inadmissible." See 8 U.S.C. § 1182. Aliens who have gained lawful admission to the United States are referred to as "deportable" aliens. See 8 U.S.C. § 1251 (1994).

comes invested with the rights guaranteed by the Constitution to all the people within our borders." *Kwong Hai Chew v. Colding,* 344 U.S. 590, 596 n. 5, 73 S.Ct. 472, 97 L.Ed. 576 (1953). There is no basis consistent with the Constitution that would permit the Court to strip these resident aliens of their recognized Fifth Amendment rights. This holding comports with a number of recent cases which have held that deportable aliens retain their fundamental liberty interests. *Nguyen v. Fasano,* 2000 WL 144216 (S.D.Cal.2000) (declining to follow *Zadvydas.*); *Vo v. Greene,* 63 F.Supp.2d 1278 (D.Col.1999) (declining to follow *Zadvydas.*); *Hermanowski v. Farquharson,* 39 F.Supp.2d 148 (D.R.I.1999) (finding a fundamental right and distinguishing between excludable and deportable aliens); *Phan v. Reno,* 56 F.Supp.2d 1149 (W.D.Wash.1999); *Tam v. INS,* 14 F.Supp.2d 1184 (E.D.Cal.1998); *Loi v. INS,* Case No. 98–2202–IEG (LSP)(S.D.Cal. July 14, 1999).

### 2. Application of Strict Scrutiny

■■■ "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). Where this right is infringed upon the court must apply strict scrutiny. Because the Court does not accept the contention that Petitioner has no fundamental liberty interest, the incarceration must be "narrowly tailored to serve a compelling state interest." *Reno v. Flores,* 507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993).

■■■ The Court must first determine whether the detention constitutes punishment or if it is intended for a legitimate regulatory purpose. If the detention is determined to be for a regulatory purpose then it cannot be excessive in relation to the government interest. *United States v. Salerno,* 481 U.S. 739, 747–48, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Here, it is undisputed that Petitioner's detention is not punishment. Courts have consistently held that detention pending deportation is not aimed to punish but is designed instead for regulatory purposes. See *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *Phan,* 56 F.Supp.2d at 1155 n. 7. Therefore, under strict scrutiny, the Court must consider whether the Petitioner's detention is excessive in light of the government's proffered regulatory interests.

■■■ The government argues that its regulatory interests are the protection of the community and preventing flight prior to deportation. (Resp't's Return 8–9). However, the Court "must necessarily balance the likelihood that the government will be able to effectuate deportation, against the dangerousness of a petitioner and the likelihood that he will abscond if released." *Phan,* 56 F.Supp.2d at 1156. As the "probability that the government can actually deport an alien decreases, the government's interest in detaining that alien becomes less compelling." *Id.*

Here, it appears highly unlikely that Vietnam will repatriate Petitioner in the near future. Vietnam has not responded to the request for travel documents for Petitioner or others similarly situated. Although the government assures the Court that the "U.S. State Department is actively engaged in attempts to conclude a repatriation agreement with the government of Vietnam," the United States has no existing repatriation treaty with Vietnam. (Resp't's Return 10). Additionally, the State Department cannot provide even a tentative date as to when a repatriation agreement with Vietnam would be complete. They only state that they are in the process of negotiations, and, "[b]ecause of the very nature of such negotiations, it is not possible to predict when they may conclude." (Resp't's Exh. B). Consequently, there is no assurance that Petitioner will be deported in the foreseeable future.

While dangerousness and flight risk may warrant detention in some circumstances, "[d]etention by the INS can be lawful only in aid of deportation. Thus, it is 'exces-

sive' to detain an alien indefinitely if deportation will never occur." *Phan*, 56 F.Supp.2d at 1156. Here, it is certainly possible that Petitioner's deportation will never occur. However, the Court will still balance the diminished government interest in continued detention based on Petitioner's danger to the community and flight risk with Petitioner's liberty interest in light of the distant possibility that Petitioner may be repatriated.

With regard to Petitioner's danger to the community, it is true that Petitioner is a convicted criminal who has served prison time for conspiracy to commit robbery. Additionally, he has violated parole twice since his release. One violation involved a firearm. However, Petitioner has not been convicted of a crime in seven years and his criminal record is not extensive. Many cases in which courts found that the government's interest in protecting the community was outweighed by the petitioner's fundamental liberty rights have involved petitioners with far more extensive and violent criminal histories than Petitioner in this case. *Lo v. INS.*, Case No. 98–2202–IEG (LSP) (S.D.Cal. July 14, 1999) (where petitioner had three felony convictions including assault with a deadly weapon); *Vo v. Greene*, 63 F.Supp.2d 1278 (D.Col.1999) (where petitioner was convicted of second degree sexual assault); *Hermanowski v. Farquharson*, 39 F.Supp.2d 148 (D.R.I.) (in which petitioner had a "prolific" criminal history); *Nguyen v. Fasano*, 2000 WL 144216 (S.D.Cal.2000) (where one petitioner was convicted of attempted second degree murder).

With regard to Petitioner's flight risk, neither party provides any argument as to whether Petitioner is likely to flee.[3] Consequently, this concern adds little, if any, weight to the government's interest in continuing Petitioner's detention.

Although the government interest in protecting the community may be compelling, the weight of this interest is drastically reduced by the indefinite nature of Peti-

tioner's incarceration. Even if the Court determines that this interest remains "compelling," the means utilized in securing this interest are not sufficiently narrowly tailored in order to meet strict scrutiny. Indefinite, or possibly permanent, incarceration is an extremely severe deprivation of liberty. Furthermore, there is no question that the protection of the community could be accomplished by means that do not unduly hinder Petitioner's liberty. For example, placing Petitioner under INS supervision is a more narrowly tailored method that serves these government interests while respecting Petitioner's fundamental right to liberty. This Court finds that, while Petitioner may pose some danger to the community, this interest balanced with his right to liberty clearly constitutes a violation of his substantive due process right.

### B. Procedural Due Process

▉▉▉▉ Although the Court has determined that Petitioner's continued indefinite detention is a violation of his substantive due process rights, the Court will also examine Petitioner's procedural due process rights. Petitioner is entitled to procedural due process of law in his detention and deportation proceedings. In determining whether Petitioner's procedural due process rights have been violated, the Court must examine "the interest at stake for the individual, the risk of an erroneous deprivation of the interest through procedures used as well as the probable value of additional or different procedural safeguards, and the interests of the government in using the current procedures." *Plasencia*, 459 U.S. at 34, 103 S.Ct. 321 (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

▉▉▉▉ As the Court has previously determined, the interest at stake for Petitioner is his liberty. There is no doubt that this interest is fundamental and should be given considerable weight. In contrast, the

---

**3.** The Court assumes that "flight risk" in this context refers to the risk that Petitioner will

fail to appear in order to be deported if his travel documents are eventually issued.

government's interests in effectuating deportation and protecting the community, while substantial, have been diminished by the indefinite nature of Petitioner's detention. In light of these findings, the result depends on the risk of erroneous deprivation and the value of additional procedures.

Under current procedures, if removal of a person pending deportation does not occur within 90 days, the Attorney General can continue to detain aliens that she determines "to be a risk to the community or unlikely to comply with the order of removal." I.N.A. § 241(a)(2), 8 U.S.C. § 1231(a)(6) (1999). This discretionary power to detain or release the alien is delegated to the INS District Director. 8 C.F.R. § 241.4; 8 C.F.R. § 236.1(d)(2)(ii). In order to be released, the alien must show "by clear and convincing evidence that the release would not pose a danger to the community or a significant flight risk." *Id.*

The first troubling element of this process is the fact that the final decision of whether to release the alien is made by the INS District Director instead of an impartial party such as a judge or jury. "Due to political and community pressure, the INS, an executive agency, has every incentive to continue to detain aliens with aggravated felony convictions, even though they have served their sentences, on the suspicion that they may continue to pose a danger to the community." *Phan,* 56 F.Supp.2d at 1157 (quoting *St., John v. McElroy,* 917 F.Supp. 243, 251 (S.D.N.Y.1996)). This possible bias provides the potential that detained persons will not receive a fair review of their request to be released and increases the risk that they will be erroneously deprived of further liberty.

The Court is also concerned that the measure of the alien's dangerousness seems to be based almost entirely on his or her criminal history. While 8 C.F.R. § 241.4(a)(1)-(9) lays out nine factors that the District Director may consider in determining whether to release an alien, the basis of the Director's decision seems predicated on the alien's underlying criminal convictions. The *Phan* court found that "instead of individually assessing the dangerousness and flight risk, Directors simply relied on the aliens' past criminal history and the fact that they were facing removal from the United States, summarily concluding that the aliens posed such risks and denying them release." 56 F.Supp.2d at 1157.

Here, Petitioner appears to have been denied release on this arbitrary basis. In his custody review early in 1999, the supervisory officer simply recounts Petitioner's criminal history on the custody review worksheet and states that Petitioner claims to no longer "bang with his old gang" before he recommends that Petitioner detention be continued. Petitioner's second custody review occurred in August of 1999; however, the custody review worksheet is almost identical to the previous one. This reviewing officer, though, recommended that Petitioner be released. Regardless of the release recommendation, the District Director continued Petitioner's detention without explanation.

The arbitrary nature of this process and the fact that the Petitioner's criminal history seems to be the primary, if not only, factor taken into account lead the Court to believe that this is not a meaningful review of Petitioner's detention. Accordingly, this Court joins other courts which have held that this does not meet the requirements of procedural due process. *Phan,* 56 F.Supp.2d 1149; *Vo v. Greene,* 63 F.Supp.2d 1278 (D.Col.1999). "The risk of erroneous deprivation of a petitioner's liberty interest is too great to deny him or her anything less than the full procedural protections available under the Constitution." *Phan,* 56 F.Supp.2d at 1157–58.

## CONCLUSION

For the reasons stated, the Court hereby **GRANTS** Petitioner's petition for writ of habeas corpus. The Court **ORDERS** the INS to either deport Petitioner to

Vietnam or release Petitioner, subject to conditions of release set by the INS.

**IT IS SO ORDERED.**